Mr. Gregory B. Cox Executive Director, Hillsborough County Public Transportation Commission Post Office Box 1110 Tampa, Florida 33601
Dear Mr. Cox:
On behalf of the Hillsborough County Public Transportation Commission, you ask substantially the following question:
Does the Hillsborough County Public Transportation Commission have the authority to regulate limousines that had a capacity of fifteen passengers or less at the time of original manufacture, even if those vehicles have subsequently been altered to a capacity greater than fifteen?
The Hillsborough County Public Transportation Commission (commission) was created by special act as an independent special district.[1] Section 2(1) of Chapter 01-299, Laws of Florida, creates the commission for the purpose of regulating "the operation of public vehicles upon the public highways of Hillsborough County and its municipalities." Among the responsibilities of the commission is the power to:
"(a) Regulate and supervise the operation of public vehicles upon the public highways and in all other matters affecting the relationship between such operation and the traveling public.
(b) Adopt rules in conformance with chapter 120, Florida Statutes, the Administrative Procedure Act.
* * *
(i) Determine whether public convenience and necessity require the operation of a public vehicle proposed in an application for a certificate or a permit.
* * *
(m) Adopt rules for safety and equipment requirements for taxicabs, limousine, vans, handicabs, and basic life support ambulances and for voice communications equipment for all public vehicles. . . ."[2]
The commission is authorized to fix or approve zones, rates, fares, and charges for public vehicles.[3] The term "public vehicle" is defined in the act to mean "a taxicab, van, limousine, handicab, basic life support ambulance, and wrecker."[4]
According to your letter, some individuals have questioned the commission's authority to regulate vehicles that provide typical limousine type for-hire services in cases where alterations after the vehicle's manufacture have increased these "super-stretched" limousines' capacity to more than fifteen passengers.
Section 3(17) of Chapter 01-299, Laws of Florida, the commission's enabling legislation, defines "Limousine" as "any motor vehicle for hire not equipped with a taximeter, with a capacity of fifteen passengers or less, including the driver." "Capacity" is defined in the act as "the maximum seating provided in a motor vehicle at the time of originalmanufacture."[5] (e.s.)
The term "original manufacture" is not defined in the act. However, in the absence of a statutory definition, the plain and ordinary meaning of words can be determined by reference to a dictionary.[6] The term "manufacture" is generally defined as something made from raw materials by hand or machinery.[7] The term "original" has been defined to mean "existing from the start: initial, primary . . . not secondary, derivative or imitative."[8] Thus, the term would appear to refer to initial production of the motor vehicle and not to any subsequent modifications.
Moreover, it is a fundamental principle of statutory construction that statutory language is not to be assumed to be surplusage; rather, a statute is to be construed to give meaning to all words and phrases contained therein.[9] Statutory language must be assumed to have some useful purpose, as the Legislature is not presumed to have enacted useless or meaningless legislation.[10] Thus the term "at the time of original manufacture" must be given meaning. Had the Legislature wished to limit the commission's jurisdiction to any limousines with seating capacities of fifteen, regardless of when such alteration occurred, such language would not have been necessary.
The special act granting the commission the authority to regulate limousines with a maximum seating capacity of fifteen at the time of original manufacture, therefore, appears to refer to seating capacity at the time the vehicle is first manufactured, regardless of any subsequent modification to increase the seating capacity. Under the rule-making authority of the commission, the commission could, in my opinion, reasonably interpret such a provision to refer to the time the vehicle rolls off the assembly line of the first manufacturer, prior to any subsequent modifications.
According to your letter, however, some super-stretched limousine owners have questioned the commission's authority to regulate such vehicles because the Florida Department of Transportation classifies such vehicles as "commercial motor vehicles" pursuant to section 316.003(66), Florida Statutes, and issues registration numbers for such vehicles as buses under section 316.003(3), Florida Statutes.[11]
While Chapter 316, Florida Statutes, reflects an intent to provide uniform provisions throughout the state, it does not preclude the Legislature from adopting a special act addressing the regulation of motor vehicles.[12] Moreover, the courts of this state have recognized that the provisions of a general law are to be read together with a subsequent special act and harmonized if possible, but if there is unresolvable conflict between the provisions, the later special act, as a more specific expression of the legislative will, will be given effect.[13]
In addition, section 316.003(3), Florida Statutes, defines a "bus" as:
"Any motor vehicle designed for carrying more than 10 passengers and used for the transportation of persons and any motor vehicle, other than a taxicab, designed and used for the transportation of persons for compensation."
A conclusion that the commission cannot regulate any vehicles classified as a "bus" under Chapter 316, Florida Statutes, would, as you point out, restrict the commission from regulating any for-hire limousine with a seating capacity of more than ten passengers contrary to the plain language of Chapter 01-299, Laws of Florida, which clearly vests jurisdiction in the commission over limousines with a seating capacity of fifteen passengers or less, including the driver.
Accordingly, I am of the opinion that the classification by the Department of Transportation of for-hire vehicles, other than taxicabs, with seating capacities of more than ten passengers as "buses" does not preclude the Hillsborough County Public Transportation Commission from regulating limousines with seating capacities of fifteen passengers or less, including the driver. Moreover, as noted above, the commission has jurisdiction to regulate such limousines with a capacity of fifteen passengers or less at the time of original manufacture, even if those vehicles were subsequently altered to a capacity of more than fifteen passengers.
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] See Ch. 01-299, Laws of Fla., compiling, codifying and revising the special acts relating to the Hillsborough County Public Transportation Commission; and see s. 2(2) of Ch. 01-299 providing that the commission is an independent special district.
[2] Section 5(1), Ch. 01-299, Laws of Fla.
[3] See ss. 5(2)(j) and 5(2)(jj), Ch. 01-299, Laws of Fla.
[4] Section 3(24), Ch. 01-299, Laws of Fla.
[5] Section 3(4), Ch. 01-299, Laws of Fla.
[6] See Sieniarecki v. State, 756 So.2d 68 (Fla. 2000) (in absence of a statutory definition, words of common usage are construed in their plain and ordinary sense and, if necessary, the plain and ordinary meaning of the word can be ascertained by reference to a dictionary); FrankenmuthMutual Insurance Company v. Magaha, 769 So.2d 1012 (Fla. 2000) (in ascertaining the plain and ordinary meaning of a term, a court may refer to a dictionary).
[7] Webster's Third New International Dictionary p. 1378 (unabridged ed. 1981). And see Black's Law Dictionary p. 984 (8th ed. 2004) (a thing that is made or built by a human being, as distinguished from something that is a product of nature); Webster's New Collegiate Dictionary p. 701 (1977) (the act or process of producing something).
[8] Webster's Third New International Dictionary p. 1592 (unabridged ed. 1981). And see Webster's New Collegiate Dictionary p. 810 (1977) (of, relating to, or constituting an origin or beginning: initial; not secondary, derivative, or imitative); The American Heritage Dictionary of the English Language (4th ed. 2000) (preceding all others in time; first; not derived from something else). Cf. Op. Att'y Gen. Fla. 00-57 (2000) (van "designed" to carry cargo but subsequently modified to carry more than 10 children did not qualify for exemption from seat beat law for a bus which is defined as motor vehicle designed for carrying more than 10 passengers and used for the transportation of persons and any motor vehicle, other than a taxicab, designed and used for the transportation of persons for compensation).
[9] Terrinoni v. Westward Ho!, 418 So.2d 1143 (Fla. 1st DCA 1982);Unruh v. State, 669 So.2d 242 (Fla. 1996) (as a fundamental rule of statutory interpretation, courts should avoid readings that would render part of a statute meaningless); Ops. Att'y Gen. Fla. 91-16 (1991) (operative language in a statute may not be regarded as surplusage); 91-11 (1991) (statute must be construed so as to give meaning to all words and phrases contained within that statute).
[10] Smith v. Piezo Technology and Professional Administrators,427 So.2d 182 (Fla. 1983); Neu v. Miami Herald Publishing Company,462 So.2d 821 (Fla. 1985) (in construing legislation, courts should not assume Legislature acted pointlessly); Sharer v. Hotel Corporation ofAmerica, 144 So.2d 813 (Fla. 1962) ("it should never be presumed that the legislature intended to enact purposeless and therefore useless, legislation. Legislators are not children who build block playhouses for the purpose, and with the gleeful anticipation, of knocking them down"); Op. Att'y Gen. Fla. 00-46 (2000) (this office will not presume that the Legislature intended to enact purposeless or useless legislation).
[11] Section 316.003(3) and (66), Fla. Stat., respectively provide:
"(3) BUS. "Any motor vehicle designed for carrying more than 10 passengers and used for the transportation of persons and any motor vehicle, other than a taxicab, designed and used for the transportation of persons for compensation.
* * *
(66) COMMERCIAL MOTOR VEHICLE. "Any self-propelled or towed vehicle used on the public highways in commerce to transport passengers or cargo, if such vehicle:
(a) Has a gross vehicle weight rating of 10,000 pounds or more;
(b) Is designed to transport more than 15 passengers, including the driver; or
(c) Is used in the transportation of materials found to be hazardous for the purposes of the Hazardous Materials Transportation Act, as amended (49 U.S.C. ss. 1801 et seq.)."
[12] See, e.g., s. 316.007, Fla. Stat., which states that the provisions of Ch. 316 are to be applicable and uniform throughout the state and in all political subdivisions and municipalities therein and that "no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized."
[13] Rowe v. Pinellas Sports Authority, 461 So.2d 72 (Fla. 1984) (when a special act and a general law conflict, the special act will prevail);McKendry v. State, 641 So.2d 45 (Fla. 1994). Chapter 316, Fla. Stat., was adopted in 1971, see Ch. 71-135, Laws of Fla.; the commission was established in 1983 by Ch. 83-423, Laws of Fla. You have advised this office, however, that prior to the Legislature's codification of the special acts relating to the commission in 2001 (Ch. 01-229, Laws of Fla.), the commission's enabling legislation did not define the term "capacity"; such language was added by Ch. 01-229, Laws of Fla.