The appellant, Jeffrey Alan Lockard, was convicted of driving under the influence of alcohol, in violation of §32-5A-191(a)(2), Code of Alabama 1975. He was sentenced to 48 hours in the Lauderdale County jail and was fined $500 plus court costs.
The evidence tended to show that on October 1, 1988, Officer Mark Parker observed the appellant's vehicle "weaving within its lane" about 18 inches to either side. Officer Parker followed the appellant for about one and a half miles, during which time he saw the appellant's tires cross the center line six to eight inches on two occasions. Officer Parker then turned on his blue lights and the appellant responded by stopping in the median.
Officer Parker asked the appellant to produce his driver's license and exit his vehicle. The appellant did both, with no apparent difficulty. The appellant then walked back to the rear of his vehicle, where he was asked to perform three field sobriety tests. The appellant passed the finger-to-nose test, but failed the horizontal gaze nystagmus test and the one-legged stand test. However, it should be noted that it was raining while the appellant was attempting to perform these three tests.
The appellant was then placed under arrest for driving under the influence, based on the fact that he had failed two of the three field sobriety tests and because his eyes were bloodshot and watery, his speech was slurred, and he smelled of alcoholic beverage. He was transported to the Lauderdale County Courthouse, where he was given an Intoxylizer 5000 breath test. The results of the test showed that the appellant had a .149% blood alcohol content.
Both before and after taking the breath test, the appellant requested an independent blood test. In response to the appellant's request, he was handed a phone book *Page 680 
by the jailer and was told to make the necessary arrangements. The appellant telephoned a local hospital and was told that the test could be administered, but only on the premises of the hospital. The appellant conveyed this information to the jailer. Instead of being taken to the hospital, the appellant was placed in the "drunk tank," where he stayed until he was released from jail.
The dispositive issue for review is whether the appellant was afforded a reasonable opportunity to obtain an independent test of his blood alcohol content, after having requested one, and after having complied with the police officer's direction to take an Intoxilyzer 5000 breath test.
Section 32-5A-194(a)(3), Code of Alabama 1975, provides, as follows:
 "The person tested may at his own expense have a physician, or a qualified technician, registered nurse or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the discretion of a law enforcement officer. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer."
This court has previously held that the Legislature does not require anyone to advise a defendant in a DUI case of his right to have an independent blood test conducted at his own expense, or of the Code section which authorizes this right, Bush v.City of Troy, 474 So.2d 164, 166 (Ala.Cr.App. 1984), aff'd,474 So.2d 168 (Ala. 1985), and that a defendant in a DUI case is required to submit to a blood alcohol content chemical test at the arresting officer's direction before that defendant is entitled to an additional blood alcohol content test at his own request. Gibson v. City of Troy, 481 So.2d 463, 467
(Ala.Cr.App. 1985). However, the issue of what police authorities are required to do when an independent test is requested by a defendant in police custody has rarely arisen.
In Bilbrey v. State, 531 So.2d 27 (Ala.Cr.App. 1987), the appellant was arrested for driving under the influence and requested a blood alcohol test independent of the P.E.I. test he submitted to at police headquarters. The appellant was provided with access to a telephone but, apparently, declined its use. The record was silent as to what action the appellant took after being told he could use the telephone. This court held that Appellant Bilbrey's attempt to obtain an independent blood alcohol test had not been thwarted and that his due process rights had not been violated, but Judge Patterson, writing for the majority, further cautioned:
 "[D]ue process requires that when an accused has complied with police requests to submit to a blood alcohol test and subsequently requests an independent blood alcohol test, the accused must be allowed a reasonable opportunity to obtain a timely, independent test at his own expense, and police authorities may not frustrate his attempts to do so. What is reasonable will depend upon the circumstances of each case.
". . . .
 ". . . [A] phone call may not always, in all circumstances, satisfy the minimal requirements of due process. We, therefore, make no per se rule regarding whether the refusal to transport an accused to a certain location for an independent test is, under all circumstances, reasonable. However, appellant must demonstrate that, based on the totality of the circumstances, the police conduct was unreasonable by clear and convincing evidence in order to establish a due process violation."
Bilbrey, supra, 531 So.2d at 29, 30. See also Cato v. State, [Ms. 3 Div. 271, April 12, 1990] (Ala.Cr.App. 1990) (appellant's attempt to gain independent blood test not thwarted by police when appellant was given access to a telephone, but made no attempt to call anyone other than his wife).
Prior to trial, in the case at bar, a hearing on the appellant's motion to suppress the results of the Intoxilyzer 5000 breath test was held. Mark Parker, the arresting officer in this case, testified that he knew *Page 681 
of no local hospitals that would administer blood alcohol content tests, even on the premises of the hospital. However, he further testified that within reason, he would transport a defendant anywhere that blood testing was available. He also testified that when a traffic fatality occurs and alcohol involvement is suspected, paramedics from the Killen Center Star Reserve Unit are called to the scene to take a blood sample. They could have been called to take a sample for this defendant, but Officer Parker conceded that he did not want to "call them out at that time of night . . . for something like a simple DUI."
The appellant testified as follows:
 "Q Do you recall what happened when you were taken to the Lauderdale County facility for a breath test?
"A Yes, sir, I do.
"Q Did you take a breath test?
"A Yes, sir, I did.
"Q Did you request a blood test?
"A Yes, sir, I did.
"Q To whom?
"A To Officer Parker.
"Q Before and after the breath test?
"A Yes, sir.
"Q What did he tell you?
 "A He told me that he really didn't have to do that, but he would give me a phone book and I could call somebody. But he never said he would take me anywhere, or anything like that.
"Q Did he give you the phone book?
"A No, sir, he didn't.
"Q Who did?
"A The jailer.
 "Q All right, what did the jailer tell you when he gave you the phone book?
 "A He said if I could get somebody to come out there and give me one, that would be fine, but they wouldn't take me nowhere.
 "Q All right, did you see Officer Parker around as you were making your phone call?
"A No, sir, I didn't."
The appellant was in police custody and could not be released until his blood alcohol content fell below 0.10%, pursuant to § 32-5A-191(g), Code of Alabama 1975. He had no realistic opportunity to be tested except by stating his wish to the police and, in turn, by their cooperating. Thus, this court sees no other alternative but to hold that the police conduct in the case at bar was unreasonable in that they did not afford the appellant an opportunity to obtain an independent blood test.
We are not alone in our holding. Our sister state of Georgia addressed this very issue in Puett v. State, 147 Ga. App. 300,248 S.E.2d 560 (1978):
 "The record shows that the accused was indeed advised of this right to an independent test by a qualified person of his own choosing, that a telephone conversation was had from the jail by the accused with an attendant at the local hospital in which he was informed that such a test could be made if he would come to the hospital, that the accused so informed the personnel at the jail where he was under arrest, and that those holding him under arrest either refused or in any event failed to take him to the hospital for that purpose.
 "The law gives one accused of driving under the influence of alcoholic beverages the right to have a chemical analysis of his blood and urine by a qualified person of his own choosing. But of what value is that right if the accused is in custody of law enforcement officials who either refuse or fail to allow him to exercise the right? We hold that under such circumstances there is coupled with the right granted to the accused a corresponding duty on the part of law enforcement officers not to deny him that right. This the officers did by not taking him by the local hospital for the test he wanted and was reasonably entitled to have. Cf. Huff v. State, 144 Ga. App. 764(2), 242 S.E.2d 361 (1978)."
Puett, supra, 147 Ga. App. at 301-02, 248 S.E.2d at 561. See also City of Blaine v. Suess, 93 Wn.2d 722, 612 P.2d 789
(1980). *Page 682 
See generally, Annot., 45 A.L.R.4th 11 (1983).
Thus, we are not making a per se rule that every person arrested for driving under the influence of alcohol should be automatically entitled to police assistance in obtaining an independent blood alcohol test. However, we do hold that when a motorist who has been charged with an alcohol-related traffic offense has cooperated fully with the police and subsequently makes telephone arrangements for the administration of a private sobriety test, he is entitled to police transportation to the test site so that the test may be administered. Therefore, the appellant's conviction must be reversed.
The question remains whether dismissal of the appellant's case or suppression of the Intoxilyzer 5000 test results is the appropriate remedy. A literal reading of § 32-5A-194(a)(3) supports the argument that the trial court is precluded from suppressing the breathalyzer results. However, "[t]he fundamental rule of statutory construction is that a court is under a duty to ascertain and effectuate legislative intent as expressed in the statute, see e.g., Gundy v. Ozier,409 So.2d 764, 765, 766 (Ala. 1981), which may be gleaned from the language used, the reason and necessity for the act and the purpose sought to be obtained. See Rinehart v. Reliance Ins.Co., 273 Ala. 535, 538, 142 So.2d 254, 256 (1962)." Pool v.State, [Ms. 5 Div. 570, January 19, 1990] (Ala.Cr.App. 1990), quoting Shelton v. Wright, 439 So.2d 55, 57 (Ala. 1983).
Thus, we agree with the holding in State v. Hilditch, 36 Or. App. 435, 584 P.2d 376 (1978), in which the Oregon Court of Appeals interpreted a statute virtually identical to §32-5A-194(a)(3):
 "[T]his language must be construed consistently with the remainder of the statute which requires that an arrestee be given the opportunity to obtain an independent chemical analysis. Thus, we think the term, 'failure' to obtain a blood test must refer to the situation where an arrestee makes no effort or request to obtain a test. Likewise, 'inability' to obtain a test refers to the situation where, for some reason independent of the conduct of either the arrestee or the police, such as loss of the blood sample by the hospital performing the test, an independent chemical analysis cannot be obtained. Where, as here, the arrestee does not obtain an independent test because he is denied a reasonable opportunity to do so by the police, there is neither a 'failure' nor an 'inability' to obtain a test under the statute. To construe the provisions of ORS 487.810 in any other manner would be to render meaningless the requirement of the statute that the arrestee be given the opportunity to obtain an independent chemical analysis of his blood, and would allow the police to profit from their own misconduct in preventing an arrestee from obtaining such a test. The trial court did not err in ordering the results of the breathalyzer suppressed for violation of the statute."
Hilditch, supra, 36 Or. App. at 437, 584 P.2d at 377.
An independent blood alcohol content test may be of great importance in an accused's preparation of his defense since it is a means of testing the reliability of the police-administered test. The appellant in the case at bar was prevented by the police from obtaining an independent blood test and from attacking the accuracy of his Intoxilyzer 5000 test. Accordingly, the results of this police-administered test must be suppressed upon retrial.
The judgment is reversed and the cause is remanded to the circuit court for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur. *Page 683