669 So.2d 242 (1996)
Ronald J. UNRUH, Petitioner,
v.
STATE of Florida, Respondent.
No. 85046.
Supreme Court of Florida.
March 7, 1996.
French C. Davis, Daytona Beach, for Petitioner.
Steve Alexander, State Attorney, and Ben Fox, Assistant State Attorney, Daytona Beach, for Respondent.
KOGAN, Justice.
We have for review State v. Unruh, 658 So.2d 1011 (Fla. 5th DCA 1994). We accepted jurisdiction to answer the following question which was certified to be of great public importance:[1]
IS THE STATE REQUIRED TO TAKE AFFIRMATIVE ACTION TO ASSIST A PERSON IN CUSTODY FOR DUI IN OBTAINING AN INDEPENDENT TEST FOR BLOOD ALCOHOL WHEN IT IS REQUESTED, PURSUANT TO SECTION 316.1932(1)(f)3, FLORIDA STATUTES?
658 So.2d at 1014.
After being arrested on suspicion of driving under the influence (DUI), Ronald J. *243 Unruh was asked to take a breathalyzer test at the Ormond Beach Police Department. Unruh indicated he preferred a blood test. The police officer told Unruh his only choice was to consent or refuse to take the breathalyzer as the police department did not offer a blood test. Unruh then took the breathalyzer test. However, the police officer told Unruh he could arrange a blood test after being processed and booked into the Volusia County jail. The police never told Unruh he could not have a blood test if he made the arrangements. Some dispute remains whether Unruh had access to a telephone at the Ormond Beach Police Department.
Unruh filed a motion to suppress the breathalyzer results due to the state's alleged denial of his blood test request. After an evidentiary hearing, the trial (county) court denied the motion, finding that Unruh was not precluded from obtaining an independent blood test, that law enforcement does not have an affirmative duty to ensure a defendant receives an independent blood test, and that the officer's actions did not actively prevent Unruh from obtaining a blood test. Thereafter, Unruh was tried and convicted of DUI under section 316.193, Florida Statutes (1991).
On appeal, the circuit court reversed and remanded for a new trial, noting the apparent conflict between section 316.1932(1)(f)3., Florida Statutes,[2] which provides for the independent blood test, and section 316.193(9), Florida Statutes,[3] which requires a mandatory holding period for DUI arrestees. In noting that the mandatory holding statute effectively nullified the independent blood test statute, the circuit court held that law enforcement had an affirmative duty to transport the arrestee to a blood testing facility. Without this affirmative assistance, the circuit court reasoned, the mandatory holding period would prevent the arrestee from having a meaningful blood test, as a post-custody blood sample would measure a blood alcohol level that had dissipated. Thus, the circuit court concluded that a post-release blood test would yield exculpatory evidence of little or no value to the arrestee.
Subsequently, the Fifth District Court of Appeal quashed the circuit court's order after finding a departure from the essential requirements of the law. 658 So.2d at 1012. Relying on the Second District Court of Appeal's decision in State v. Saylor, 625 So.2d 907 (Fla. 2d DCA 1993), the district court held that law enforcement did not have an affirmative duty to assist Unruh in obtaining an independent blood test. According to the district court, the only requirement of law enforcement was not to engage in active wrongdoing by interfering with Unruh's right to arrange for an independent blood test. See State v. Durkee, 584 So.2d 1080 (Fla. 5th DCA) (holding breathalyzer results could be suppressed where authorities refused to allow DUI arrestee to obtain independent blood test) review dismissed, 592 So.2d 682 (Fla.1991). The district court then certified the above question for our review. 658 So.2d at 1014.
For the reasons expressed below, we answer the certified question in the affirmative, and hold that law enforcement must render *244 reasonable assistance in helping a DUI arrestee obtain an independent blood test upon request. In some cases, minimal aid such as providing access to a telephone and directory will be sufficient; in others, more active assistance such as transporting the arrestee to a blood testing facility will be necessary. Whether the assistance provided is "reasonable" and thus sufficient to satisfy law enforcement's duty under the statute will depend on the circumstances of each case.
We begin our analysis with a review of the law in this area. This Court has recognized that a DUI arrestee "has the right to have a [blood] sample taken and analysis made by an independent expert" under section 316.1932(1)(f)3. Houser v. State, 474 So.2d 1193, 1195 n. 1 (Fla.1985). However, we have never addressed the issue presented herewhether law enforcement has an affirmative duty in connection with that right. As the district court points out, there is a split of opinion on the issue in the various county courts. At least two county courts have held that law enforcement has an affirmative duty to assist an arrestee in obtaining an independent test, while at least as many have held that law enforcement has no such duty. See 658 So.2d at 1014 n. 5 and cases cited therein. The Second District has reached the same conclusion as the Fifth District in this casethat no duty exists.
In State v. Saylor, two DUI arrestees requested independent blood tests after taking the state-administered breathalyzer. 625 So.2d at 908. The requests were denied because "law enforcement policy did not authorize or require that a blood alcohol test be made available to a DUI arrestee upon request." Id. On motion of the arrestees, the county court suppressed the breathalyzer results for failure to comply with section 316.1932(1)(f)3. Id. The Second District reversed, concluding that the legislature did not intend "to obligate the state to help an arrestee gather evidence for his defense." Id. at 909.
In contrast, neighboring jurisdictions have found that law enforcement has an affirmative duty to assist under similarly worded independent test statutes. See Lockard v. Town of Killen, 565 So.2d 679 (Ala.Crim.App. 1990); Puett v. State, 147 Ga.App. 300, 248 S.E.2d 560 (Ga.Ct.App.1978). For example, in Lockard, the Alabama Court of Criminal Appeals likewise was faced with a situation where the right to an independent blood test[4] was counterposed by a mandatory holding statute.[5] 565 So.2d at 681. The DUI arrestee in Lockard requested an independent blood test both before and after taking the state's breathalyzer test. After being given a phone book, the arrestee arranged a blood test with a local hospital. However, the hospital only administered the blood test on site. When the arrestee informed the police, they placed him in the "drunk tank" rather than transporting him to the hospital. The Alabama court found that, under the circumstances, law enforcement's non-cooperation denied the arrestee a reasonable opportunity to secure an independent test. 565 So.2d at 681. The court went on to hold that when a DUI arrestee fully complies with police requests to take a breathalyzer and then subsequently arranges his own blood test, "he is entitled to police transportation to the test site so that the test may be administered." Id. at 682. As the arrestee could not be released until his blood alcohol content fell below .10%, the court reasoned that "[h]e had no realistic opportunity to be tested except by stating his wish to the police and, in turn, by their cooperating." Id. at 681.
*245 The Georgia Court of Appeals in Puett similarly ruled under almost identical facts. In addition to the arrestee's right to an independent test under the Georgia statute,[6] the Puett court held that law enforcement have "a corresponding duty ... not to deny him that right." 248 S.E.2d at 561. The DUI arrestee in Puett also had arranged a blood test at a local hospital. The court found that law enforcement's failure or refusal to take the arrestee to the hospital for his pre-arranged blood test constituted denial of his right under statute. Id. The Georgia court reasoned that the right to an independent test would be of little value absent such law enforcement assistance. Id.
As a fundamental rule of statutory interpretation, "courts should avoid readings that would render part of a statute meaningless." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 456 (Fla. 1992); Villery v. Florida Parole & Probation Comm'n, 396 So.2d 1107 (Fla.1980); Cilento v. State, 377 So.2d 663 (Fla.1979). Furthermore, whenever possible "courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another." Forsythe, 604 So.2d at 455. This follows the general rule that the legislature does not intend "to enact purposeless and therefore useless, legislation." Sharer v. Hotel Corp. of America, 144 So.2d 813, 817 (Fla.1962).
Contrary to these guiding principles, the Fifth District's interpretation in the instant case and the Second District's interpretation in Saylor render section 316.1932(1)(f)3. meaningless. To be sure, law enforcement's duty to assist a DUI arrestee is not self-executing; law enforcement must render reasonable assistance only upon request from an arrestee that he or she desires an independent blood test. We agree with the dissent below that this interpretation of the statute fulfills the legislature's intent "to afford an individual the opportunity to verify or challenge the accuracy of the test given by law enforcement and to document any discrepancy." Unruh, 658 So.2d at 1015 (Griffin, J., dissenting); accord Gibson v. City of Troy, 481 So.2d 463, 467 (Ala.Crim.App.1985) ("The purpose of allowing an accused to obtain an additional test is to provide him a means of `cross checking' the state's test."). Indeed, as the arrestee must be held in custody as dictated by section 316.193(9), "the very status as custodian places a duty on the jailer to offer reasonable assistance" upon request. Unruh, 658 So.2d at 1015 (Griffin, J., dissenting). Finally, we hold that where an arrestee's right to an independent blood test effectively has been denied by law enforcement's failure to render reasonable assistance, suppression under Florida Rule of Criminal Procedure 3.220(n) is a proper sanction. Accord Durkee, 584 So.2d at 1082 (holding suppression proper sanction where authorities refused to allow DUI arrestee to obtain independent blood test).
Accordingly, we answer the certified question in the affirmative and hold that when requested by a DUI arrestee, law enforcement must render reasonable assistance in obtaining an independent blood test authorized under section 316.1932(1)(f)3. Thus, we quash the decision under review and remand for further proceedings consistent with this opinion. We also disapprove Saylor to the extent it is inconsistent herewith.
It is so ordered.
OVERTON, SHAW, HARDING and ANSTEAD, JJ., concur.
WELLS, J., dissents with an opinion, in which GRIMES, C.J., concurs.
WELLS, Justice, dissenting.
I dissent because I do not read sections 316.1932(1)(f)3 and 316.193(9) to require the State to undertake any affirmative action to assist a DUI arrestee to obtain an independent *246 test for blood alcohol. I believe that Judge Thompson's majority opinion in the opinion below sets forth a correct and workable analysis of the statutes at issue, and I would approve that decision.
Under section 316.1932(1)(f)3., a DUI arrestee has a right to have an independent blood test.[7] I do not believe, however, that in order to reconcile the apparent conflict between this section and section 316.193(9) we must require the State to take affirmative action to assist the arrestee. The majority's effort to follow the rules of statutory construction and harmonize these sections to effectuate the legislative intent violates another rule of statutory construction: that legislative intent is determined from the plain meaning of the statutory language. See St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071 (Fla.1982). The majority unnecessarily reads into the statute the additional requirement that the State has an affirmative duty to assist the arrestee to obtain an independent test. Instead, I read these two provisions together to place the burden on the arrestee to arrange and set up, at the arrestee's own expense, the independent test, and the State's duty would only be to not interfere with the arrestee's opportunity to obtain a test.
Recently, the New York Court of Appeals addressed a similar issue. See People v. Finnegan, 85 N.Y.2d 53, 623 N.Y.S.2d 546, 647 N.E.2d 758, cert. denied, ___ U.S. ___, 116 S.Ct. 311, 133 L.Ed.2d 214 (1995). In Finnegan, at around 2:30 a.m., the police arrested the defendant for driving while intoxicated. After the defendant agreed to a Breathalyzer test, the police informed him that he had the right to have an independent blood test at his own expense.[8] The defendant never took an independent blood test and was unable to leave the jail until later that afternoon.[9] Two weeks prior to trial, the defendant submitted an affidavit stating that the police did not allow him to receive an independent test. The New York Court of Appeals assumed the truth of the affidavit and faced the issue of whether New York law, which affords an arrestee the right to an independent chemical test, also imposes an affirmative duty on the police to assist the arrestee to obtain the test.[10] Reaching its decision, the court stated:
We hold, therefore, that law enforcement personnel are not required to arrange for an independent test or to transport defendant to a place or person where the test may be performed. Of course, the police should not impede arrested individuals from exerting or accomplishing their statutory prerogative. The authorities should even assist persons in custody with appropriate advice and communication means, e.g., a telephone call opportunity. On the other hand, we have settled the general question that the police have no affirmative duty to gather or help gather evidence for an accused.
Id. 623 N.Y.S.2d at 549, 647 N.E.2d at 761 (citations omitted). Accord Provo City v. Werner, 810 P.2d 469 (Utah Ct.App.1991) (stating that since Utah's implied consent law does not require the police to notify defendant of the right to the test or to assist defendant in obtaining the test, the police had no duty to affirmatively assist the defendant).
*247 Contrarily, the majority decision in this case, holding that law enforcement authorities have an affirmative duty to assist a DUI arrestee, will have the practical effect of forcing law enforcement officers to transport a DUI arrestee to a treatment facility every time a DUI arrestee requests an independent blood test if such test cannot be taken at the place of detention. This clearly contravenes the legislative intent of the statutes. See State v. Unruh, 658 So.2d 1011, 1013 (Fla. 5th DCA 1995).
Moreover, the majority opinion, by stating that law enforcement must render "reasonable assistance" to help a DUI arrestee obtain an independent blood test upon request but leaving what is reasonable to be determined on a case-by-case basis, will lead to confusion and disparity in the application of the law. This is patently illustrated by the facts of this case. Here, the arrestee was told by law enforcement officers that he could arrange for a test, and it was undisputed that he had a phone available to place calls. See Unruh, 658 So.2d at 1012. After an evidentiary hearing, the trial judge found that the defendant was not denied an opportunity to obtain an independent blood test. Under the majority opinion, which remands for further proceedings, is the trial judge to make a determination of whether the availability of the phone was reasonable under the circumstances, or is the majority opinion stating that what was done here was per se unreasonable? Additionally, if there is a duty to transport an arrestee to a treatment facility, can an arrestee be denied the right flowing from that duty because of a lack of funds to pay for the transportation? As Judge Thompson stated in the opinion below, there is no indication that the legislature intended the State to pay the costs for independent testing for indigent arrestees. See id. at 1013.
Consequently, I believe we should follow those courts which have given some guidance as to what duty the state has in not interfering with the arrestee's right to obtain an independent blood test. I would conclude that this duty only requires providing an arrestee with telephone access to secure the test. See Finnegan; State v. Dake, 247 Neb. 579, 529 N.W.2d 46 (1995) (finding that law enforcement did not have a duty to transport an arrestee in order for independent testing). This result will provide guidance to lower courts in interpreting the statute, will harmonize the two sections without violating any rule of statutory construction, and will provide a practical solution to these situations. I believe that the majority opinion will afford a basis for a technical challenge to appropriate DUI arrests and will create an unnecessary judicially imposed barrier to the legislative mandate that alcohol-impaired drivers be removed from Florida's streets and highways.
As the district court in this case stated:
In the case sub judice, the state never refused Unruh the opportunity to call and arrange for an independent test. They simply stated they would not provide transportation or make arrangements for the test. Here, the state did not interfere with Unruh's right to arrange for an independent blood test.
State v. Unruh, 658 So.2d at 1014.
Accordingly, I would approve the district court's opinion in this case.
GRIMES, C.J., concurs.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
[2] Section 316.1932(1)(f)3, Florida Statutes (1991), provides:

The person tested may, at his own expense, have a physician, registered nurse, other personnel authorized by a hospital to draw blood, or duly licensed clinical laboratory director, supervisor, technologist, or technician, or other person of his own choosing administer a test in addition to the test administered at the direction of the law enforcement officer for the purpose of determining the amount of alcohol in his blood or breath or the presence of chemical substances or controlled substances at the time alleged, as shown by chemical analysis of his blood or urine, or by chemical or physical test of his breath. The failure or inability to obtain an additional test by a person does not preclude the admissibility in evidence of the test taken at the direction of the law enforcement officer.
[3] Section 316.193(9), Florida Statutes (1991), provides:

A person who is arrested for a violation of this section may not be released from custody:
(a) Until he is no longer under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893 and affected to the extent that his normal faculties are impaired;
(b) Until his blood alcohol level is less than 0.05 percent; or
(c) Until 8 hours have elapsed from the time he was arrested.
[4] Ala.Code § 32-5A-194(a)(3) (1975), provides:

The person tested may at his own expense have a physician, or a qualified technician, registered nurse or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the discretion of a law enforcement officer. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.
[5] Ala.Code § 32-5A-191(g) (1975), reenacted as Ala.Code § 32-5A-191(j) (Supp.1995), provides:

A person who has been arrested for violating this section shall not be released from jail under bond or otherwise, until there is less than the same percent by weight of alcohol in his or her blood [.10%] as specified in subsection (a)(1) hereof.
Of note, the Alabama legislature recently lowered the prohibited blood alcohol level from.10% to .08%. 1995 Ala.Acts No. 95-784, § 2.
[6] Ga.Code Ann. § 68A-902.1(a)(3) (1978), reenacted as Ga.Code Ann. § 40-6-392(a)(3) (Michie 1994), provides:

The person tested may have a physician or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer. The justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.
[7] This right is not absolute, as an arrestee's failure to arrange the test or to have the independent test performed does not affect the admissibility of the State's required test. See § 316.1932(1)(f)3., Fla.Stat. (1995).
[8] New York, like Florida, does not have a statutory requirement that the defendant be affirmatively advised of the right to an independent blood test. However, in Finnegan, as in the case sub judice, the police informed the defendant of the right.
[9] New York does not have a parallel statute to section 316.193(9) requiring the police to detain the arrestee. However, in Finnegan, the defendant repeatedly stated that he intended to leave the jurisdiction, and he was immediately arraigned and bail was set at $500 cash or $1,000 bond, which the defendant was unable to post.
[10] As stated in section 1194(4)(b) of McKinney's Consolidated Laws of New York Annotated (1991): "Right to additional test. The person tested shall be permitted to choose a physician to administer a chemical test in addition to the one administered at the direction of the police officer."