[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 440 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 441 
Wylie Yelverton appealed to the Court of Criminal Appeals from a judgment entered against him by the Houston Circuit Court. The Court of Criminal Appeals affirmed the trial court's judgment without an opinion. Yelverton v. City of Dothan (CR-03-0724, Nov. 19, 2004), 923 So.2d 348 (Ala.Crim.App. 2004) (table). We granted Yelverton's petition for the writ of certiorari. We affirm the judgment of the Court of Criminal Appeals.
 Facts and Procedural History
On the evening of January 19, 1999, Officer Jeremy Collins of the City of Dothan Police Department observed an automobile moving extremely slowly in the right lane of Ross Clark Circle. Officer Collins stopped the automobile and told the driver, Wylie Yelverton, that he had pulled him over because he was driving erratically. He asked to see Yelverton's driver's license. When Officer Collins leaned down to take the license from Yelverton, he detected a strong odor of alcohol. Officer Collins asked Yelverton whether he had been drinking, and Yelverton replied that he had consumed three beers.
Officer Collins administered several field-sobriety tests to Yelverton. The test results indicated that Yelverton was probably driving under the influence of alcohol. Officer Collins took Yelverton into custody and took him to the police station.
What happened at the police station was recorded on videotape; the videotape was submitted as part of the record. Our review of the videotape shows that while Yelverton was in custody at the police station, Officer Collins asked him to submit to the Intoxilyzer 5000 breath test.[1] Yelverton then asked the Officer questions about the breath test and about his legal rights. Officer Collins read Yelverton the implied-consent law.[2] Officer Collins explained to Yelverton that the implied-consent law meant that when a person receives an Alabama driver's license, he consents to take a breath test to evaluate his blood-alcohol content if he is arrested on suspicion of driving under the influence of alcohol. Officer Collins also explained that the person gives up the right to have an attorney present while the breath test is administered. *Page 442 
Yelverton asked Officer Collins whether he could have an attorney present before he performed the breath test. Officer Collins again informed Yelverton that he did not have a legal right to have an attorney present until after he had taken the breath test. Yelverton then asked Officer Collins other questions about his legal rights and made statements regarding "the Supreme Court" and the admissibility in legal proceedings of breath-test results. Officer Collins answered Yelverton's questions and repeatedly informed Yelverton that his refusal to take the breath test would result in the automatic suspension of his driver's license.
The videotape shows that shortly before submitting to the breath test, Yelverton asked: "Can I pay for a blood test at the hospital?" Officer Collins responded, "After you take this test, then we can — Breathalyzer first, then we take you for a blood test if you wish. But you can't go take a blood test before" the breath test is administered. Yelverton asked a few more questions and then took the breath test.
After Yelverton took the breath test, a police officer escorted him out of the room to a counter where the jailer informed Yelverton that his bond had been set at $500. Yelverton asked the officer if he could sign a property bond. The officer replied that he could, but that that would have to be done through the magistrate. Yelverton asked, "If I call my friend for $500 cash, can he get me out?" The officer replied, "Yes." Yelverton then asked if he could use the telephone. The officer informed him that there were officers waiting to book other detainees who had been brought to the police station. The officer told Yelverton that "as soon as we're done booking the other folks, you can use the phone. But not now. There are officers waiting." The videotape ends after that exchange.
The breath test indicated that Yelverton's blood-alcohol content was .11 of one percent. Yelverton was charged with driving under the influence of alcohol in violation of §32-5A-191(a)(2), Ala. Code 1975.[3] A jury found Yelverton guilty of driving under the influence of alcohol. Yelverton was sentenced to 12 months' imprisonment in the city jail. The trial court suspended the sentence and placed Yelverton on probation for 24 months. The Court of Criminal Appeals affirmed the trial court's judgment, without an opinion. Yelverton, supra.
We granted Yelverton's petition for the writ of certiorari to determine the following question of first impression: Whether Yelverton's due-process rights were violated by his being denied the independent blood test authorized by § 32-5A-194(a)(3), Ala. Code 1975, when his request for such an independent blood test was made before, but not after, he submitted to the breath test administered by law-enforcement officials.
 Standard of Review
The trial court entered its judgment after hearing oral testimony from the parties regarding the events that took place while Yelverton was in police custody. Therefore, the ore tenus rule applies to the trial court's findings of fact. "Under the ore tenus rule, a trial court's findings of fact are presumed correct and its judgment will be reversed only if plainly or palpably wrong or against the preponderance of the evidence." Exparte Cater, 772 So.2d 1117, 1119 (Ala. 2000). However, we review de novo, without a presumption of correctness, the trial court's conclusions as *Page 443 
to whether Yelverton's due-process rights were violated when he was denied the independent blood test authorized by §32-5A-194(a)(3), Ala. Code 1975, which he had requested before, but not after, he submitted to a breath test. See Christian v.Murray, 915 So.2d 23 (Ala. 2005); State v. American TobaccoCo., 772 So.2d 417, 419 (Ala. 2000); and Ex parte Graham,702 So.2d 1215, 1221 (Ala. 1997).
 Discussion
The Court of Criminal Appeals concluded in its unpublished memorandum that Yelverton requested a blood test before he had completed the Intoxilyzer 5000 breath test, but "he did not even mention a blood test after he had completed the Intoxilyzer 5000 breath test." In reaching its conclusion, the Court of Criminal Appeals quoted the following: "`[W]hen a motorist who has been charged with an alcohol-related traffic offense has cooperated fully with the police and subsequently makes telephone arrangements for the administration of a private sobriety test, he is entitled to police transportation to the test site so that the test may be administered.'" (quotingLockard v. Killen, 565 So.2d 679, 682 (Ala.Crim.App. 1990)). Accordingly, the Court of Criminal Appeals held that one is entitled to an independent blood-alcohol test only if he requests and pursues such a test after he has complied with the implied-consent law and taken the blood-alcohol test administered by law-enforcement officials; a request made before the arresting officer administers a blood-alcohol test is not sufficient.
Yelverton argues that the Court of Criminal Appeals' interpretation of § 32-5A-194(a)(3), Ala. Code 1975, violates his due-process rights.[4] Yelverton contends that his request for an independent blood-alcohol test should have been honored regardless of whether he made the request before or after the blood-alcohol test had been administered by law-enforcement officials. He argues that the police denied him due process of law by depriving him of a reasonable opportunity to obtain an independent blood-alcohol test by making him wait to use the telephone until after the officer had finished processing other detainees. Therefore, he contends, the results of the breath test must be suppressed and his conviction reversed.
Section 32-5A-194(a)(3), Ala. Code 1975, provides that a person involved in a proceeding arising from the alleged operation of a vehicle under the influence of alcohol:
 "[M]ay at his own expense have a physician, or a qualified technician, registered nurse or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the discretion of a law enforcement officer. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating *Page 444 
to the test or tests taken at the direction of a law enforcement officer."[5]
Law-enforcement officers do not have a positive duty to inform those charged with driving under the influence of their statutory right to an additional blood-alcohol test under §32-5A-194(a)(3), Ala. Code 1975:
 "There is . . . no obligation on the part of anyone to advise the defendant of the existence of [Ala. Code 1975, § 32-5A-194] or of his right to alternative testing at his own expense. The Legislature does require the testing officers to inform the person being tested of the consequences of his refusal to submit to the test. The Legislature could have made a law requiring that the testing officer discuss alternative testing. They did not. We will certainly not add something which the Legislature has not required to the already complicated responsibilities of these officers."
Bush v. City of Troy, 474 So.2d 164, 166 (Ala.Crim.App. 1984), aff'd, 474 So.2d 168 (Ala. 1985). See also O'Connor v. City ofMontgomery, 462 So.2d 756, 757 (Ala.Crim.App. 1984) ("The officer is not required to notify the accused that he may have an independent blood-alcohol test performed.") (citing Parker v.State, 397 So.2d 199 (Ala.Crim.App. 1981)). However, when an accused requests an independent blood-alcohol test, law-enforcement officials must give him a reasonable opportunity to procure a timely independent blood-alcohol test at his own expense. Bilbrey v. State, 531 So.2d 27, 29 (Ala.Crim.App. 1988). Moreover, law-enforcement officials cannot frustrate or interfere with these reasonable efforts. Bilbrey,531 So.2d at 29. "To refuse an accused this reasonable opportunity, upon request, constitutes a violation of due process and results in the suppression of the test conducted by the police authorities."Bilbrey, 531 So.2d at 29 (citing Brown v. Municipal Court ofLos Angeles Judicial Dist., 86 Cal.App.3d 357, 150 Cal.Rptr. 216
(1978)). However, Yelverton's case is not one in which he was denied a reasonable opportunity to procure an independent blood-alcohol test to which he was entitled under §32-5A-194(a)(3), Ala. Code 1975. Nor did the police frustrate or interfere with any reasonable effort by Yelverton to obtain an independent blood-alcohol test.
 I.
At the time he requested an independent blood-alcohol test, Yelverton was not entitled to it. Yelverton argues that "[t]he timing of the request [for an independent blood-alcohol test] is immaterial to the entitlement to the test." Yelverton's brief, at 33. We disagree.
Section 32-5A-194(a)(3), Ala. Code 1975, provides that independent blood-alcohol tests are permissible "in addition to any administered at the discretion of a law enforcement officer." Therefore, "a defendant in a DUI case is required to submit to a blood alcohol content chemical test at the arresting officer's direction before that defendant is entitled to an additional blood alcohol content test at his own request." Lockard,565 So.2d at 680 (citing Gibson v. City of Troy, 481 So.2d 463, 467
(Ala.Crim.App. 1985)). Because § 32-5A-194(a)(3), Ala. Code 1975, refers to "any [tests] administered at the discretion of a law enforcement *Page 445 
officer," the holding in Lockard also applies when the law-enforcement officer administers a breath test instead of a blood-alcohol chemical-content test. Thus, Yelverton did have a statutory right to an independent blood-alcohol test, but not until after he had submitted to the breath test at the direction of the law-enforcement officer.
Our review of the videotape submitted to this Court as part of the record reveals the following exchange took place between Yelverton and the law-enforcement officer before Yelverton took the breath test:
 Yelverton: "Can I pay for a blood test at the hospital?"
 Officer Collins: "After you take the test then you can — Breathalyzer first, then we take you for a blood test if you wish. But you can't go take a blood test before."
Yelverton had not yet submitted to the breath test; therefore, he was not entitled to an independent blood-alcohol test at that time. Officer Collins's response was that Yelverton could have one, "if [he] wish[ed]," after he had taken the breath test. Officer Collins did not know whether Yelverton was going to submit to the breath test or if, after Yelverton did submit to one, he would wish then to have an additional independent test.
Yelverton's question, "Can I pay for a blood test at the hospital?" cannot be construed as a request for an independent blood-alcohol test; it was one in a long string of questions he posed to Officer Collins concerning his legal rights in regard to the breath test. However, even if we assume that Yelverton's question was a request for an independent blood-alcohol test, he had no right to such a test because he had not met the condition precedent to the creation of such a right — he had not taken the breath test that Officer Collins was directing him to take. Yelverton cannot claim that Officer Collins violated his due-process rights by failing to honor a request for a statutory right that he did not have.
 II.
Later, after Yelverton had submitted to the breath test, he became entitled under § 32-5A-194(a)(3), Ala. Code 1975, to an independent blood-alcohol test, but he did request one at this time; he did not even mention an independent blood-alcohol test after he took the breath test. The Court of Criminal Appeals stated in its unpublished memorandum: "It appears from our review of the videotape . . . that after he took the Intoxilyzer 5000 breath test Yelverton asked to make a telephone call in order to arrange bail, but he did not ask to make a telephone call in order to make arrangements for a blood test."
Our independent review of the videotape reveals that after Yelverton took the breath test, the jailer informed Yelverton that his bond was set at $500. Yelverton asked whether he could use a property bond, and the jailer replied that the magistrate's office would have to handle that request. Yelverton then asked, "If I call my friend for $500 cash, can he get me out?" To which the jailer answered, "Yes." Yelverton then asked if he could use the telephone. The jailer told Yelverton: "[A]s soon as we're done booking the other folks, you can use the phone. But not now. There are officers waiting." We agree with the Court of Criminal Appeals that after Yelverton underwent the breath test, he did not ask for or mention an independent blood test, nor did he indicate that he wanted to make a telephone call to arrange for such an independent blood *Page 446 
test.[6]
 III.
Yelverton argues that the police "frustrated his efforts [to obtain a blood test] by not even allowing him a telephone call, stating that he would have to wait until they had finished processing others who had been arrested." Yelverton's brief, at 33. Yelverton contends that making him wait to use the telephone violated his due-process rights because, he argues, the police did not know, and indeed never will know, whether he was going to telephone a friend or use the telephone call to arrange for an independent blood-alcohol test. However, the mere possibility that he might have used the telephone call to arrange an independent blood-alcohol test does not establish that the police committed a due-process violation by telling him he had to wait to use the telephone. To establish a due-process violation based on the failure of the police to provide a reasonable opportunity to obtain an independent blood-alcohol test, "[the accused] must demonstrate that, based on the totality of the circumstances, the police conduct was unreasonable by clear and convincing evidence." Bilbrey v. State, 531 So.2d at 30. Telling Yelverton to wait to make a telephone call that he said was to arrange bail, but that could possibly have been used to arrange for an independent blood-alcohol test, in the absence of any indication that he would use the telephone for that purpose, is not evidence of unreasonable police conduct that establishes a due-process violation. In addition, because Yelverton never indicated that he wanted to use the telephone to obtain an independent blood test, telling him to wait to use the telephone until after other arrested individuals had been processed does not constitute an attempt by the police to frustrate or to thwart his attempt to obtain an independent blood test.
The Court of Criminal Appeals concluded that after Yelverton took the breath test, he never again mentioned an independent blood-alcohol test. In support of his argument that the police thwarted his attempt to obtain an independent blood-alcohol test, Yelverton argues that the Court of Criminal Appeals' decision conflicts with its decisions in Bilbrey, supra, and Lockard, supra. These two cases, however, are distinguishable from this one. In Bilbrey, the accused informed his arresting officer, Tim McGlothlin, that he wanted to be taken to a local hospital to obtain an independent blood-alcohol test. 531 So.2d at 28. McGlothlin provided Bilbrey access to a telephone so that Bilbrey could arrange such a test, but then he refused to take Bilbrey to the hospital because Bilbrey was under arrest. The Court of Criminal Appeals held:
 "In the instant case, we find that [Bilbrey] was allowed a reasonable opportunity to arrange an independent test by being allowed access to a telephone. . . . *Page 447 
[Bilbrey] was allowed access to a telephone and could have arranged to have an independent test conducted, at his own expense, at the place of incarceration. Based upon these facts, there is nothing to suggest that police authorities thwarted [Bilbrey's] attempts to obtain an independent test and, thus, we find no due process violation."
Bilbrey, 531 So.2d at 29. Bilbrey is distinguishable because Bilbrey made a request for an independent blood-alcohol test once he became entitled to an additional test pursuant to § 32-5A-194, Ala. Code 1975, that is, "subsequent to the administration of the [photoelectric intoximeter] test." 531 So.2d at 28. In contrast, Yelverton made no request for an independent blood-alcohol test after he took the breath test. Moreover, the police were not thwarting Yelverton's attempt to obtain an independent blood-alcohol test by making him wait to make a telephone call for what he represented was to arrange bail.
The Court of Criminal Appeals found a due-process deprivation under § 32-5A-194, Ala. Code 1975, in Lockard. Lockard had requested an independent blood test "both before and after taking the breath test." 565 So.2d at 679. Lockard "had telephoned a local hospital and was told that the test could be administered, but only on the premises of the hospital." 565 So.2d at 679. Lockard informed the jailer of this fact and, instead of transporting him to the hospital for a timely independent blood test, the jailer placed Lockard in the "drunk tank."565 So.2d at 679. The Court of Criminal Appeals held:
 "[W]e do hold that when a motorist who has been charged with an alcohol-related traffic offense has cooperated fully with the police and subsequently makes telephone arrangements for the administration of a private sobriety test, he is entitled to police transportation to the test site so that the test may be administered."
565 So.2d at 682. Not only did Lockard request an independent blood-alcohol test before and again after undergoing the breath test at the direction of the police, he had also arranged with a hospital to obtain the test. Yelverton merely inquired about an independent blood-alcohol test before taking the breath test; he did not request one afterward; and he did not arrange for taking such a test.
 Conclusion
Yelverton's due-process rights were not violated when he did not receive an independent blood test under § 32-5A-194(a)(3), Ala. Code 1975, when his request for such a test, if made at all, came before, but not after, he submitted to or agreed to submit to a breath test.
AFFIRMED.
NABERS, C.J., and HARWOOD, STUART, and BOLIN, JJ., concur.
[1] The record uses "Breathalyzer" and "Intoxilyzer 5000" interchangeably to refer to the machine used to administer a breath test for blood-alcohol content.
[2] Section 32-5-192, Ala. Code 1975, states, in pertinent part:
 "Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent . . . to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor."
[3] Section 32-5A-191(a)(2), Ala. Code 1975, states: "A person shall not drive or be in actual physical control of any vehicle while . . . [u]nder the influence of alcohol."
[4] Yelverton also argues in his brief to this Court that the results of the field-sobriety tests should have been suppressed by the trial court and that the Court of Criminal Appeals erred in affirming the trial court's refusal to suppress the results. Yelverton did not petition for certiorari review as to this issue; therefore, we do not consider it. "It has long been settled that this Court can only address those issues that are set out in the petition as grounds for certiorari." Ex parteFranklin, 502 So.2d 828, 828 n. 1 (Ala. 1987) (citing Rule 39, Ala. R.App. P.; Nix v. State, 271 Ala. 628, 126 So.2d 123
(1960)); and Liberty Nat'l Life Ins. Co. v. Stringfellow,265 Ala. 561, 92 So.2d 927 (1957). "In considering the petition for certiorari, we pass on only the grounds on which certiorari is sought." Ex parte Thaggard, 276 Ala. 117, 119, 159 So.2d 820,822 (1963) (citing City of Gadsden v. Elrod, 250 Ala. 148,33 So.2d 270 (1947); Davenport-Harris Funeral Home v. Chandler,264 Ala. 623, 88 So.2d 878 (1956); Kelley v. Osborn,269 Ala. 392, 113 So.2d 192 (1959); and Harris v. State, 272 Ala. 146,130 So.2d 231 (1961)).
[5] Despite the last sentence of § 32-5A-194(a)(3), Ala. Code 1975, the Court of Criminal Appeals has held that, if the "failure" or "inability" to obtain an additional test is the result of unreasonable police conduct, then the results of tests administered by the law-enforcement officer may be suppressed and the defendant's conviction reversed on the basis of a failure to allow the defendant to obtain a private blood-alcohol test. See,e.g., Lockard, 565 So.2d at 682.
[6] Yelverton argues that, even though he did not request an independent blood-alcohol test after he took the breath test, "the police were on notice of the request and could not simply reject the request because it was made prior to the breath test." Yelverton's brief, at 33. However, as we discuss, Yelverton had to agree to the breath test in order to make an effective request for an independent test. He had not done so at the time he made the "request." After he agreed to the breath test, he made no such request. Moreover, there is no evidence indicating that any such request was rejected. Officer Collins told Yelverton, "After you take the test then you can — Breathalyzer first, then we take you for a blood test if you wish. But you can't go take a blood test before." Yelverton subsequently took the breath test, but expressed no desire for an independent blood test following that breath test; he expressed only that he wanted to telephone a friend to come bail him out.