Dear Chief Thomas:
You ask substantially the following question:
Does an "Advance Life Support Pumper or Engine" which is permitted by the Bureau of Emergency Medical Services as an "Advance Life Support Non-transport vehicle" comply with the statutory requirement of "other medical facility" in section316.1932(1)(c), Florida Statutes, which has been expanded to include ambulance or other medical emergency vehicles?
According to your letter, a question has been raised as to whether a legal blood draw may be conducted in or about an "Advance Life Support Pumper or Engine" by EMS personnel pursuant to section 316.1932(1)(c), Florida Statutes. It is assumed for purposes of this inquiry that the requirements of section316.1932 would otherwise be complied with;[1] the sole issue presented to this office is whether the advance life support pumper or engine qualifies as a "medical facility" as that term is defined in section 316.1932(1)(c).
Section 316.1932(1)(c), Florida Statutes, provides in pertinent part:
 "Any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state is, by operating such vehicle, deemed to have given his or her consent to submit to an approved blood test for the purpose of determining the alcoholic content of the blood or a blood test for the purpose of determining the presence of chemical substances or controlled substances as provided in this section if there is reasonable cause to believe the person was driving or in actual physical control of a motor vehicle while under the influence of alcoholic beverages or chemical or controlled substances and the person appears for treatment at a hospital, clinic, or other medical facility and the administration of a breath or urine test is impractical or impossible. As used in this paragraph, the term "other medical facility" includes an ambulance or other medical emergency vehicle. The blood test shall be performed in a reasonable manner." (e.s.)
Section 316.1932(1)(c) was amended in 1996 to allow a blood test to be conducted in an ambulance or other medical emergency vehicle.[2] Prior to the amendment, several courts had held that the term "medical facility" did not include ambulances.[3]
I am not aware of, nor have you brought to the attention of this office, any appellate court decisions that have interpreted the 1996 expansion of the definition of "other medical emergency vehicle." The term, however, clearly includes more than just ambulances since the definition refers to "an ambulance or other medical emergency vehicle." Had the Legislature sought to restrict the statute to ambulances, the use of the term "or other medical emergency vehicle" would have been mere surplusage. Statutory language is not to be assumed to be surplusage; rather, a statute is to be construed to give meaning to all words and phrases contained within the statute.[4]
I am aware of the provisions of section 401.23(5), Florida Statutes, which defines "Ambulance" or "emergency medical services vehicle" for purposes of Part III, Chapter 401, Florida Statutes, to mean "any privately or publicly owned land or water vehicle that is designed, constructed, reconstructed, maintained, equipped, or operated for, and is used for, or intended to be used for, land or water transportation of sick or injured persons requiring or likely to require medical attention during transport."[5] Part III, Chapter 401, however, relates to medical transportation services. The intent of the Legislature in amending the definition of section 316.1932(1)(c), Florida Statutes, however, appears to have been to permit blood draws to be conducted at the scene rather than just in a hospital or clinic, provided that the appropriate equipment and staff such as that contained in an ambulance are available.[6]
According to your letter, the city's "Advance Life Support Pumper or Engine" has been permitted by the Bureau of Emergency Medical Services of the Florida Department of Health.[7] You further have advised this office that the vehicle is equipped with the same advanced life support equipment as an ambulance but is a "non-transport" vehicle. The intent behind the 1996 amendment expanding the definition of medical facilities does not appear to relate to emergency transportation but rather to expand those locations where a legal medical blood draw may be administered for the purpose of conducting an investigation into driving under the influence. Thus, the fact that the vehicle has been designated as "non-transport" would not, in my opinion, necessarily remove it from the definition of "other medical emergency vehicle."
The Legislature may wish to clarify its intent on this issue. In the absence of such clarification, however, I am of the opinion that an "Advance Life Support Pumper or Engine" that is permitted by the Bureau of Emergency Medical Services as an "Advance Life Support Non-transport vehicle" constitutes a "medical emergency vehicle" as that term is defined in section 316.1932(1)(c), Florida Statutes, to include ambulance or other medical emergency vehicles.
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] See, e.g., s. 316.1932(1)(f)2.a., Fla. Stat., stating in part that "[o]nly a physician, certified paramedic, registered nurse, licensed practical nurse, other personnel authorized by a hospital to draw blood, or duly licensed clinical laboratory director, supervisor, technologist, or technician, acting at the request of a law enforcement officer, may withdraw blood for the purpose of determining its alcoholic content or the presence of chemical substances or controlled substances therein."
[2] See s. 4, Ch. 96-330, Laws of Fla.
[3] See House of Representatives Committee on Criminal Justice Final Bill Analysis Economic Impact Statement on CS/HB's 173, 1851, 2547, p. 6, dated August 8, 1996. Seegenerally, State v. Waligroski, 3 Fla. L. Weekly Supp. 454a (Hillsborough Co. Ct. September 5, 1995) (when blood is drawn at the scene and not at a hospital, a blood test is not admissible);State v. Hall, 2 Fla. L. Weekly Supp. 228c (Palm Beach Co. Ct., March 22, 1989).
[4] See, e.g., Terrinoni v. Westward Ho!, 418 So. 2d 1143
(Fla. 1st DCA 1982); Unruh v. State, 669 So. 2d 242 (Fla. 1996) (as a fundamental rule of statutory interpretation, courts should avoid readings that would render part of a statute meaningless); Ops. Att'y Gen. Fla. 95-27 (1995); 91-16 (1991) (operative language in a statute may not be regarded as surplusage); 91-11 (1991) (statute must be construed so as to give meaning to all words and phrases contained within that statute).
[5] Compare s. 316.003(1), Fla. Stat., defining "Authorized emergency vehicles" as "[v]ehicles of the fire department (fire patrol), police vehicles, and such ambulances and emergency vehicles of municipal departments, public service corporations operated by private corporations, the Department of Environmental Protection, the Department of Health, and the Department of Transportation as are designated or authorized by their respective department or the chief of police of an incorporated city or any sheriff of any of the various counties."
[6] See title to Ch. 96-330, Laws of Fla., stating in part that the act amends s. 316.1932 to provide "that a blood test may be conducted in an ambulance or similar vehicle[.]" And see Finnv. Finn, 312 So. 2d 726 (Fla. 1975); Parker v. State,406 So. 2d 1089 (Fla. 1981) (one indicator of Legislature's intent is the title of the law enacting the statute); State v. Bussey,463 So. 2d 1141 (Fla. 1985) (while title is not determinative on issue of legislative intent, it may be persuasive); Op. Att'y Gen. Fla. 99-67 (1999) (court may look to the title of an act to interpret the intent of the Legislature).
[7] See Rule 64E-2.003, Fla. Admin. C., Advanced Life Support Service License — Ground. And see subsection (6)(a) of the rule providing that "[u]nless otherwise specifically exempted, each advanced life support nontransport vehicle, when personnel are providing advanced life support treatment or care, must be staffed with a certified paramedic or licensed physician."