BOLIN, Justice.
The State of Alabama, pursuant to Rule 39, Ala. RApp. P., petitioned this Court for a writ of certiorari to review whether the Court of Criminal Appeals erred in reversing the trial court’s judgment revoking Troy Andrew Smiley’s probation. We *567 hold that it did, and we reverse and remand.

Underlying Facts and Procedural History

On June 13, 2008, Smiley pleaded guilty in the Lee Circuit Court to the unlawful possession of drug paraphernalia. He was sentenced to one year’s imprisonment; however, the trial court suspended the sentence and placed Smiley on supervised probation for one year. Almost three months before his sentencing on the unlawful-possession conviction, Smiley was involved in the murder of Jeffery Blake Stone. The following facts detailing Smiley’s involvement in the murder are outlined chronologically in a statement he made to an investigator at the Etowah County Sheriffs Office:[1] On March 24, 2008, Smiley’s friend and neighbor, Nathan Lee, used Smiley’s 9mm Ruger brand handgun to kill Stone. Smiley’s participation in the murder began approximately two weeks before the murder when Lee discussed with Smiley his desire to kill Stone. After Lee shot Stone on March 24, 2008, he and Smiley disposed of the body that same day by burying it beside a logging road. A few months later, Smiley contacted Lee and told him that he needed the gun back because the girl he had purchased it from told him that if she did not get the gun back, a drug dealer was going to kill her. Lee and Smiley at some point thereafter retrieved the gun, which Lee had buried. “About a month later,” Smiley stopped by the site where they had buried Stone and discovered that Stone’s legs were sticking out of the ground. Smiley contacted Lee and they subsequently dug up the body. Smiley and Lee placed the body in Smiley’s truck and went back to Smiley’s house. Lee then transferred the body in his truck and eventually placed it in a freezer at his house. On July 1, 2008, Smiley confessed to the events surrounding the murder of Stone.
On July 24, 2008, the trial court issued a “probation tolling order” and issued a warrant for Smiley’s arrest based on Smiley’s alleged commission of a new offense — murder. On September 4, 2008, the trial court conducted a probation-revocation hearing. Jeff Hopper, a criminal investigator with the Etowah County Sheriffs Office, testified at the hearing regarding his interviews with Smiley. Smiley’s statement to Hopper detailing the events surrounding the murder was also read into evidence at the hearing. On September 18, 2008, the trial court entered the following order revoking Smiley’s probation:
“[A]lthough the Etowah County murder took place prior to the time of [Smiley’s] June 13, 2008, plea, conviction, and probation in Lee County for [the unlawful possession of drug paraphernalia], [Smiley] violated his probation. According to [Smiley’s] statement, he participated in contemporaneous events intended to cover up the murder, which would be part of the res gestae of the charged crime, up until his confession on July 1, 2008.”
(Emphasis added.)
Smiley appealed his probation revocation to the Court of Criminal Appeals, which reversed the trial court’s order revoking Smiley’s probation. Smiley v. State, 52 So.3d 563 (Ala.Crim.App.2009). The Court of Criminal Appeals, relying on Rutledge v. State, 512 So.2d 824 (Ala.Crim.App.1987), concluded that “[b]ecause the [trial] court relied on alleged misconduct by Smiley that occurred almost three *568 months before the court sentenced him and placed him on probation, the [trial] court’s order revoking Smiley’s probation is due to be reversed.” In Rutledge, the Court of Criminal Appeals held that charges based on conduct occurring before sentence is imposed and probation ordered cannot form the basis for revoking a defendant’s probation on the ground that the defendant has committed a new offense. In its petition to this Court for the writ of certiorari, the State contends, in part, that the Court of Criminal Appeals’ decision conflicts with Ex parte Cater, 772 So.2d 1117 (Ala.2000), Ex parte Yelverton, 929 So.2d 438 (Ala.2005), and Friedman v. Friedman, 971 So.2d 23 (Ala.2007), because, it says, the Court of Criminal Appeals improperly reweighed the evidence and did not give effect to the presumption of correctness afforded a trial court’s judgment in cases in which evidence is presented ore tenus.

Standard of Review

The trial court in this case entered its judgment after hearing testimony from Investigator Hopper regarding his interviews with Smiley and after hearing the details contained in Smiley’s statement to Hopper, which was read into evidence. Hence, the ore tenus rule applies to the trial court’s findings of fact.
“ ‘The ore tenus rule provides that a trial court’s findings of fact based on oral testimony “have the effect of a jury’s verdict,” and that “[a] judgment, grounded on such findings, is accorded, on appeal, a presumption of correctness which will not be disturbed unless plainly erroneous or manifestly unjust.” Noland Co. v. Southern Dev. Co., 445 So.2d 266, 268 (Ala.1984). “The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.” Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986).’
“Ex parte Anonymous, 803 So.2d 542, 546 (Ala.2001). ‘The trial court’s judgment in cases where the evidence is heard ore tenus will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.’ River Conservancy Co., L.L.C. v. Gulf States Paper Corp., 837 So.2d 801, 806 (Ala.2002). Accord Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 13 (Ala.1989). ‘In ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of the witnesses, and it should accept only that testimony which it considers worthy of belief.’ Clemons v. Clemons, 627 So.2d 431, 434 (Ala.Civ.App.1993).
“ ‘ “Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court....’” Ex parte Roberts, 796 So.2d 349, 351 (Ala.2001) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996)). ‘When the evidence in a case is in conflict, the trier of fact has to resolve the conflicts in the testimony, and it is not within the province of the appellate court to reweigh the testimony and substitute its own judgment for that of the trier of fact.’ Delbridge v. Civil Serv. Bd. of Tuscaloosa, 481 So.2d 911, 913 (Ala.Civ.App.1985).”
Ex parte R.E.C., 899 So.2d 272, 279 (Ala.2004).
“A probation-revocation hearing is a bench trial and the trial court is the sole fact-finder.” Ex parte Abrams, 3 So.3d 819, 823 (Ala.2008).

Analysis

In its brief before this Court, the State points out that the evidence at the probation-revocation hearing regarding the *569 chronological order of events occurring after the murder and before Smiley’s confession was conflicting. As previously noted, the murder in this case occurred on March 2k, 2008; Smiley was placed on probation for possession of drug paraphernalia on June 13, 2008; and Smiley confessed to the events surrounding the murder on July 1, 2008. Investigator Hopper testified regarding his interviews with Smiley. According to Hopper, Smiley checked on Stone’s buried body approximately one month after Lee shot Stone and he and Lee buried Stone’s body. Smiley and Lee moved the body to a freezer at Lee’s home, where it was ultimately found. A few months after moving the body, Smiley told Lee that he needed the gun back, and Lee retrieved the buried gun and gave it back to Smiley.
Smiley’s statement detailing the events surrounding the murder was also read into the evidence. The facts according to his statement are as follows: A few months after Stone’s shooting and the burial of his body, Smiley told Lee that he needed the gun back. Smiley and Lee thereafter retrieved the gun, which Lee had buried. A month later, Smiley went back to the site where they had buried Stone and discovered that Stone’s legs were sticking out of the ground. Smiley and Lee dug up the body, and Lee eventually placed the body in a freezer at his house. According to the chronology of events contained in Smiley’s statement, the gun was retrieved first, a few months after the shooting. Then, approximately one month after the gun was retrieved, Lee and Smiley moved the body. Smiley’s statement also confirms that approximately one week before Smiley’s confession on July 1, 2008, Lee went to Smiley’s home and told Smiley that he wanted to fill a 55-gallon barrel with diesel fuel to burn Stone’s body but that Smiley told Lee he was busy. The morning Smiley confessed to the events surrounding the murder — July 1, 2008 — Lee again went to Smiley’s house and asked Smiley if he had found a barrel yet and Smiley stated that he had not.
The Court of Criminal Appeals determined that all Smiley’s alleged misconduct, i.e., the events surrounding Stone’s murder, occurred approximately three months before Smiley was placed on probation. The trial court, however, relied on the chronology of events as detailed in Smiley’s statement to Investigator Hopper, concluding that, even though the murder took place before Smiley was sentenced and placed on probation, “he participated in contemporaneous events intended to cover up the murder, which would be part of the res gestae of the charged crime, up until his confession on July 1, 2008.” In other words, the trial court apparently concluded that, based on the chronology of events as detailed in Smiley’s statement, some of the acts, i.e., retrieving the gun, moving the body, attempting to locate a barrel in which to dispose of the body, occurred after Smiley was placed on probation and that such conduct occurred in order to cover up the murder. Accordingly, the trial court, as the fact-finder, did not exceed its discretion in revoking Smiley’s probation based on this conduct.
Based on the foregoing, we reverse the judgment of the Court of Criminal Appeals reversing the trial court’s order revoking Smiley’s probation and remand the cause for proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and LYONS, STUART, SMITH, PARKER, and SHAW, JJ., concur.
WOODALL and MURDOCK, JJ., concur in the result.

. As discussed infra, the evidence of the timing of these events at Smiley’s probation-revocation hearing was not consistent.