643 So.2d 692 (1994)
DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, Petitioner,
v.
Kimberly SATTER, Respondent.
No. 93-2816.
District Court of Appeal of Florida, Fifth District.
October 14, 1994.
*693 Enoch J. Whitney, Gen. Counsel, and Rafael E. Madrigal, Asst. Gen. Counsel, Miami, for petitioner.
Stuart I. Hyman, NeJame and Hyman, P.A., Orlando, for respondent.
THOMPSON, Judge.
This is a petition for certiorari filed by the State of Florida, Department of Highway Safety and Motor Vehicle ("DHSMV"). DHSMV seeks review of the circuit court's order which granted Kimberly Satter's ("Satter") petition for certiorari filed with the circuit court.[1] In Satter's petition for certiorari to the circuit court, she contested the suspension of her driver's license for refusing to submit to a blood-alcohol test.[2] This suspension was upheld by an administrative hearing officer. The circuit court, sitting in its appellate capacity, overturned the hearing officer's decision. The circuit court judge concluded that the statute was unconstitutional and that although Satter had initially refused to take the breath test, she changed her mind after a short interval and rescinded her refusal to take the breath test. The circuit court ruled that even though the testing officer said that it was too late and that her initial refusal was the basis for the suspension of her Florida driver's license, she had complied with the statute by asking to be tested again. We grant the petition, quash the order and remand with direction to reinstate the hearing officer's findings because the hearing officer's findings and order were supported by competent substantial evidence. See Education Dev. Ctr, Inc. v. City of West Palm Beach Zoning Bd. of Appeals, 541 So.2d 106, 108 (Fla. 1989).

FACTS
Satter was arrested for DUI[3] after she was observed operating her car in an erratic manner. Officer Brehne of the Orlando Police Department saw Satter driving her vehicle with its lights out. She stopped on a grassy area. She got out of the car, pulled down her jumpsuit and began to urinate. Brehne approached on foot. When Satter saw Brehne, she pulled up her jumpsuit. Officer Brehne saw her stagger, sway and slump against her car. When Officer Brehne spoke with Satter, he noticed that she had the odor of the impurities of an alcoholic beverage on her breath and that she had slurred speech. She spoke about being kicked out of CJ's, her dead grandmother and her friend inside the bar. He also noticed that her eyes were bloodshot and glazed, that her balance was poor and that her moods were changing. She appeared to be "extremely intoxicated." She told Officer Brehne that she was waiting for a friend to take her home. Satter was not arrested at that time, but she was told not to drive. Officer Brehne left the scene.
As he was leaving the scene, Brehne saw Satter get into her car, squeal her tires and drive off. Brehne saw her skid through a stop sign into an intersection. He followed her into a Circle K parking lot and stopped. Brehne approached Satter and told her to get out of the car. She got out and attempted to walk away. Brehne told her he was investigating a DUI and that she would have to perform field sobriety tests. She failed the tests and was arrested for DUI. As *694 Brehne attempted to handcuff her, she resisted and had to be forcibly restrained.
Satter was taken to the central breath testing facility and was asked to submit to a blood-alcohol test and sobriety tests while being videotaped. She refused to participate in the tests or the videotaping. The operator officer explained to her that her license would be suspended if she refused to take the tests. This circumstance was explained to her several times. The explanations were videotaped. A few minutes after refusing to be videotaped taking the tests, she spoke with the arresting officer. She then changed her mind. Satter argues that although she initially refused to take the tests, she was scared and just wanted to have someone explain to her what was going to happen during the videotaping. After the operator had turned on the videocamera, she told the operator and arresting officer that she wanted to have it explained first. The arresting officer asked the operator to turn off the videocamera while he and Satter went into the hall to discuss her questions. The operator said that he could not turn it off and start over. Satter and the arresting officer went into the hallway and talked about the videotaping. The operator turned the videocamera off. After a few moments had passed, the arresting officer and Satter returned to the room where she agreed to take the test. The operator told her that it was too late and completed a document indicating that she had refused to take the test. Pursuant to statute, the arresting officer suspended her license for one year.
Pursuant to § 322.2615(6)(a),[4] Florida Statutes, Satter sought a formal hearing before an administrative hearing officer on the issue of her license suspension. The administrative hearing officer sustained the suspension after the hearing. At the hearing, the evidence presented included the written documents from Satter's arrest and her refusal to submit to the breath test. The videotape was also seen by the hearing officer. Neither the arresting officer nor the operator of the videocamera testified at the administrative hearing. Satter testified to support her case. The hearing officer ruled that Satter's license was properly suspended because she refused to take the test. Satter petitioned the circuit court by writ of certiorari. See § 322.2615(13), Fla. Stat. (1991).[5] The circuit court granted the petition.
The circuit court found the statute unconstitutional because it deprived Satter of due process and found that Satter rescinded her refusal and made herself available to take the test. The court cited the case of Larmer v. State, Dep't. of Highway Safety and Motor Vehicles, 522 So.2d 941 (Fla. 4th DCA), review denied, 531 So.2d 1352 (Fla. 1988) as the basis for its finding that a short interval between an initial refusal and the recantation of that refusal is a revocation of the refusal. Larmer is the only Florida district decision dealing with a person initially refusing to take a blood-alcohol test and then rescinding that refusal by agreeing to take the tests. We do not find Larmer applicable. For the reasons detailed herein, we find both of the circuit court's reasons specious.

DISCUSSION
This court in two previous cases has held section 322.2615, Florida Statutes (1991), constitutional because it affords automobile drivers due process. See Department of Highway Safety and Motor Vehicles v. Stewart, 625 So.2d 123 (Fla. 5th DCA 1993); Conahan v. Dep't. of Highway Safety and Motor Vehicles, Bureau of Driver Improvement, 619 So.2d 988 (Fla. 5th DCA 1993). These two decisions rejected the specific reasoning used by the circuit court to find the statute unconstitutional. The circuit court incorporated Stewart in its opinion as the reason for granting the petition. Stewart, *695 having rejected the circuit court's specific reasoning for finding the statute unconstitutional, cannot sustain the circuit court's order.
We also distinguish Larmer based upon the facts. Larmer, 522 So.2d 941. In Larmer, the petitioner refused to take the test until he spoke with his employer. The employer told Larmer to take the test. From the language in the case, it appears that Larmer made an unequivocal request to take the test again which was refused by the operator. In the case sub judice, there was sufficient evidence for the hearing officer to determine, based upon Satter's initial refusal and her behavior during this entire episode, that her eventual request to take the test was conditional or equivocal.
The hearing officer only has to determine by a preponderance of the evidence that the arresting officer had probable cause for Satter's arrest; that she was arrested lawfully; that she refused to submit to a blood-alcohol test and that she was told that her license would be suspended for one year if she refused the test. See § 322.2615(7)(b), Fla. Stat. (1991). This determination can be made without witnesses testifying on behalf of DHSMV. A determination can be made based upon the written documents generated at the time of Satter's arrest and refusal to take the test. See § 322.2615(11), Fla. Stat. (1991). If these elements are present, the hearing officer must sustain the suspension. The hearing officer found, and we agree, that the suspension by the arresting officer was valid. Satter then had the burden to show, under the Larmer decision, that she rescinded her refusal.
During the hearing, the hearing officer questioned Satter about her refusal. She admitted that she initially refused to take the test because she was afraid. She testified that once the arresting officer allayed her fears, she requested to take the test within a few minutes after she refused. When questioned by the hearing officer, Satter admitted that she was asked "several times" to take the test while the videocamera was taping. She admitted she never gave a yes or no answer. She admitted being told that if she refused, her license would be suspended. The hearing officer was also aware of her mood swings and her lack of cooperation at the scene of the arrest and at the central booking office ("CBO"). The arresting officer noted that Satter
displayed mood swings while inside. She was flirtatious, she cried about her brother `on the front line' in the Persian Gulf stating that he `was going to die.' She asked me what she could do to get out of this and asked me to get breakfast with her, she then called me an `asshole' and a `jerk ...' [Satter] was brought to CBO where she continued her mood swings ...
Other documents noting Satter's refusal to take the test include the Alcohol Influence Form signed by the operator and the Affidavit of Refusal to Submit to Breath, Urine, or Blood Test signed by the arresting officer. There was a record basis for the hearing officer's order validating the suspension.

CONCLUSION
The duty of the circuit court on a certiorari review of an administrative agency is limited to three components: Whether procedural due process was followed; whether there was a departure from the essential requirements of law; and whether the administrative findings and judgment were supported by competent substantial evidence. Education Dev. Ctr., Inc., 541 So.2d at 108. The record supports the finding of the hearing officer. The circuit judge reweighed the evidence and substituted his judgment for that of the agency. The hearing officer was the trier of fact. The hearing officer was in the best position to evaluate the evidence and the witness and to make the determination about the nature of Satter's recision.
We issue the writ with instructions that the circuit court's order is quashed and the hearing officer's order is reinstated.
Writ GRANTED and REMANDED with instructions.
HARRIS, C.J., concurs.
GRIFFIN, J., dissents without opinion.
NOTES
[1] Fla.R.App.P. 9.030(b)(2)(B); City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982).
[2] § 322.2615(13), Fla. Stat. (1991).
[3] § 316.193, Fla. Stat. (1991).
[4] This section provides:

If the person arrested requests a formal review, the department must schedule a hearing to be held within 30 days after such request is received by the department and must notify the person of the date, time, and place of the hearing.
§ 322.2615(6)(a), Fla. Stat. (1991).
[5] This section provides in relevant part:

A person may appeal any decision of the department sustaining a suspension of [that person's] driver's license by a petition for writ of certiorari to the circuit court in the county wherein such person resides or wherein a formal or informal review was conducted ...
§ 322.2615(13), Fla. Stat. (1991).