GRIFFIN, J.
Petitioner, Department of Highway Safety and Motor Vehicles [“the Department”], seeks a writ of certiorari from this Court to quash the opinion of the circuit court, sitting in its appellate capacity. In its opinion, the circuit court held that the Department’s administrative hearing officer departed from the essential requirements of the law in sustaining the driver’s license suspension of Respondent, Michelle Ann Cherry [“Ms. Cherry”], for refusing to submit to a breath alcohol test. We grant the writ and quash the circuit court’s decision.
The charging affidavit prepared by Trooper Peter C. Hooker of the Florida Highway Patrol sets forth the following pertinent facts:
On Thursday, August 26, 2010 at 12:30 AM I was driving southbound on State Road 551 (Goldenrod Road) in the inside through lane. As I was just north of Valencia College Lane I was about to pass the “Betty’s Laughing Horse” bar. At that time, I[sic] white four door Pontiac Grand Am drove quickly out of the parking lot, across all northbound lanes of traffic, the center turn lane and into the path of my marked law enforcement vehicle. I quickly braked to avoid a collision with the white Pontiac Grand Am and watched it travel southbound in the inside through lane of State Road 551. Then the white Pontiac Grand Am turned quickly from the southbound through lane onto Valencia College Lane.
I followed the white Pontiac Grand Am and conducted a traffic stop on Valencia College Lane, just east of State Road 551. As I approached the vehicle on the driver’s side, the single occupant, white female shouted through the driver’s window, “I can’t unroll the window, it’s broken.” I asked her to open the door, which she complied. As the white female opened the driver’s door, she said, “Hi, Officer.” I could smell a strong odor of an alcoholic beverage coming from the inside of the passenger compartment of the vehicle. I asked the female driver if she realized that she almost struck my patrol vehicle. She replied with, “Oh shit, really? I’m so sorry.” As I looked at the white female driver, I could see her eyes were glassy, bloodshot and had a watery appearance to them. Her speech was slurred and very loud as she spoke to me.
I asked the white female driver for her license, registration and insurance. She said, “Yeah, here.” She handed me the documents as I requested. I identified the female driver as Michelle Ann Cherry (FL DL:# [ ]). I then asked her if she had anything to drink tonight. She said, ‘Yeah.” I asked her what she had to drink and she said, “About 5 or 6 draft beers, Sir.” I asked her where she was going and she said, “I’m going home. I only live two blocks from here. Please, I know I shouldn’t be driving. I’m a Class D holding Security Guard and I work at the Orange County Convention Center, this will fuck me so bad.” I asked her why she was driving if she knew she shouldn’t be. She replied with, “I got enough shit going on in my life and I don’t need this shit, please! I’m begging you.”
I looked at her and asked her to please step out of the vehicle. As she grabbed the door handle to open the door, her hand slipped off of the handle twice and she glared at the handle and *851 said, “Damn it!” She finally opened the door using the inside door handle with her left hand. As she exited the vehicle, she grabbed the top of the door frame to steady herself. She exited the vehicle and then placed her left hand on the roof of the ear while keeping her right hand on the top of the door. Both of her knees almost buckled and she caught herself from falling on the ground. I told her that I believed that she was too intoxicated to be driving. She replied with, “Yeah, I know.”
I then asked her if she would participate in field sobriety exercises. She said, “I’d rather you let me park my car on the side of the road and let me go. I’m only two blocks from my house. PLEASE!” I told her that I could not let her do that. I asked her again if she would participate in field sobriety exercise [sic]. She replied with, “Please just let me go. This is going to fuck me, so bad, you have no idea.” I told her that I was not going to let her go and asked her a third time if she would participate in field sobriety exercises. She replied, “I’d rather you just let me go! Come on, man! We’re on the same team! I’m a Class D Security Officer, we gotta work together.” I asked her one last time if she would participate in field sobriety exercises. She replied with, “I want my lawyer! I’m not doing shit, you’re bias and you’re gonna fuck me, so I ain’t doing shit!”
[[Image here]]

I transported Michelle to the DUI Center. After the observation period, Michelle was escorted into Room 3 where she was given the opportunity to provide the required breath samples. Michelle repeatedly asked for her lawyer and failed to cooperate with providing two breath samples. She failed to follow instructions that were given to her by Officer Armani. She kept biting the mouth piece and would barely blow into the mouth piece. Michelle was advised that because she failed to comply that it was considered a refusal for the test at 01:38. She kept saying that it wasn’t her fault that the machine didn’t work and that the mouth piece became detached from the device.

Michelle was advised that her license was suspended for a period of one year. She was transported to the Orange County Jail’s central booking without further incident.[1]
(Emphasis added).
Ms. Cherry invoked her right to a formal administrative hearing. At the hearing, the hearing officer entered the relevant documents into the record and heard the live testimony of Trooper Hooker and Ms. Cherry. Among the documents admitted by the hearing officer was the equipment-generated Breath Alcohol Test Affidavit [“BATA”], which reflected breath alcohol sample readings of .199 and .168, despite her lack of cooperation during the testing. However, the BATA further reflected that both samples suffered from deficient breath volume, and, therefore, were “Not Reliable to Determine Breath Alcohol Level.”
On October 7, 2010, the hearing officer entered “Findings of Fact, Conclusions of Law, and Decision,” affirming the order that suspended Ms. Cherry’s driver’s license. The hearing officer expressly found:
Consequently, [Ms. Cherry] was arrested for DUI and taken to the DUI facility and read the implied consent warnings. *852 [Ms. Cherry] was extremely difficult and failed to follow instruction. Upon many failed attempts, her refusal to provide a chemical test of her breath was label (sic) at 1:38 a.m.
(Emphasis- added). The hearing officer then concluded:
After consideration of the foregoing, I conclude, as a matter of law, that the law enforcement officer had probable cause to believe.that [Ms. Cherry] was driving or in actual physical control of a motor vehicle in this state while under the influence of alcoholic beverages or chemical or controlled substances; [Ms. Cherry] refused to submit to any such test after being requested to do so by a law enforcement officer or correctional officer, subsequent to a lawful atrest; and that [Ms. Cherry] was told that if she refused to submit to such test his or her privilege to operate a motor vehicle would be suspended for a period of 1 year or, in the case of a second or subsequent refusal, for a period of 18 months.
I find that all elements necessary to sustain the suspension for refusal to submit to a breath, blood, or urine test under section 322.2615 of the Florida Statutes are supported by a preponderance of the evidence.
(Emphasis added).
Ms. Cherry then sought first-tier certio-rari review in the circuit court for the Ninth Judicial Circuit. See § 322.2615(13), Fla. Stat. (2010). In that petition, Ms. Cherry raised the following arguments:
1) Trooper Hooker never advised Ms. Cherry that her failure to submit to field sobriety tests would be used against her, thereby creating a “safe harbor” situation.
2) Trooper Hooker did not have probable cause to believe that Ms. Cherry was driving or in actual control of a motor vehicle while impaired.
3) When Ms. Cherry requested her attorney and requested a blood test, Trooper Hooker improperly read the “Hoch” form, per State v. Hoch, 500 So.2d 597 (Fla. 3d DCA 1986).
4) When Ms. Cherry requested a blood test, she was not provided with assistance as required ' under section 316.1932(l)(f)3., Florida Statutes.
5) Ms. Cherry did not refuse to take the breath-alcohol test because she provided two breath samples as evidenced by the video tape.
6) Ms. Cherry was denied her right to counsel.
In its opinion entered August 23, 2011, a three-judge panel of the circuit court concluded that Ms. Cherry’s fourth and fifth arguments were meritorious and granted her first-tier certiorari petition. The panel concluded in pertinent part:
Argument IV: [Ms. Cherry] argues that when she requested a blood test she was not provided with assistance as required under section 316.1932(l)(f)3., Florida Statutes. Under this statute, law enforcement officers shall not interfere with a person’s opportunity to obtain an independent blood test and shall provide the person with timely telephone access to secure the test. Further, [Ms. Cherry] cites the case Unruh v. State, 669 So.2d 242 (Fla.1996) where the Florida Supreme Court held that law enforcement officers are required to render reasonable assistance in helping motorists arrested for driving under the influence to obtain an independent blood test upon request. The Department argues that before [Ms. Cherry] had the right to request a voluntary blood test, she was required first to submit to the breath-alcohol test. According to the Department, [Ms. Cherry’s] failure to *853 provide valid samples resulted in a refusal to submit to the breath-alcohol test and thus barred her from obtaining a blood test.
This Court reviewed the video at the DUI testing center where [Ms. Cherry] repeatedly requested a blood test and was not provided with any assistance from Trooper Hooker, the breath technician, or anyone at the DUI testing center such as providing her with telephone access to make arrangements for the test. Further, this Court finds that the Department’s response to this argument is without merit because competent substantial evidence is lacking that [Ms. Cherry] refused to submit to the breath-alcohol test as addressed in argument V of her Petition.
Argument V: [Ms. Cherry] argues that she did not refuse to take the breath-alcohol test because she provided two breath samples as evidenced by the video tape. She produced two samples with results of 0.199 (volume not met) and 0.168 (volume not met) as stated in the Breath Alcohol Test Affidavit. The Department argues that [Ms. Cherry’s] low volume samples were properly construed by law enforcement and the hearing officer as a refusal to comply with breath testing pursuant to Rule 11D-8.002(12), Florida Administrative Code (2010). Rule 11D-8.002(12) states that failure to provide the required number of valid breath samples constitutes a refusal to submit to the breath-alcohol test.
This Court observed on the video that [Ms. Cherry] did agree to take the breath-alcohol test and made several attempts to provide samples by blowing into the Intoxilyzer 8000 machine. Further, the Breath Alcohol Test Affidavit demonstrates that [Ms. Cherry] did provide two breath samples collected within fifteen minutes of each other and consistent with an approved breath-alcohol test as required under Rule 11D-8.002(13) [sic] and regulated by section 316.1932(l)(a)2., Florida Statutes. The breath-alcohol test administered on [Ms. Cherry] was made in substantial conformity with the applicable administrative rules and statutes, Dep’t of Highway Safety & Motor Vehicles v. Russell, 793 So.2d 1073 (Fla. 5th DCA 2001).
Although a majority of the cases cited by [Ms. Cherry] are not controlling in this Circuit, they are persuasive because they are very similar factually to the instant case. See Mulligan v. State, 9 Fla. L. Weekly Supp. 146a (Fla. 7th Cir.2002); Wolok v. DHSMV, 1 Fla. L. Weekly Supp. 204a (Fla. 11th Cir. 1992); and Burson v. Collier, 226 Ga. 427, 175 S.E.2d 660 (Ga.1970). The Supreme Court of Georgia in Burson held that suspending a person’s driver’s license greatly hinders that person’s use and enjoyment of an item of that person’s personal property and thus, the statute providing the authority for the license suspension should be strictly construed. When statutes do not explain what constitutes a “complete” breath-alcohol test, a showing that a person did not complete the test (within the judgment of the operator) is not evidence of a refusal to submit to a breath-alcohol test within the contemplation of the statute. To consider this information as evidence, would provide the operator with an unfettered right to determine what is and what is not a complete test. Burson, 175 S.E.2d at 662.
In the instant case, the applicable Florida Statutes under chapter 316 and 322 do not explain what constitutes a “complete” breath-alcohol test. The breath technician and Trooper Hooker decided to determine an “implied refusal” after the second breath-alcohol test *854 time frame. The Department’s argument that the samples are invalid solely because [Ms. Cherry] did not perform the test to the breath technician’s satisfaction is not persuasive. To apply the Department’s argument could open the door to a pattern of providing breath technicians and law enforcement officers with unrestrained power when determining what is and what is not a complete test. Therefore, a showing that [Ms. Cherry] did not complete the test (within the judgment of the breath technician) should not be considered as evidence of a refusal to submit to a breath-alcohol test within contemplation of the statutes. Accordingly, the Department failed to meet its burden as to the required element under section 322.2615(7)(b)2., Florida Statutes, because it did not show by a preponderance of the evidence that [Ms. Cherry’s] driver’s license was suspended because she refused to submit to the breath-alcohol test after being requested to do so by the law enforcement officer.
Based upon the court record, this Court concurs with [Ms. Cherry’s] arguments IV and V and finds that the hearing officer’s decision to sustain [Ms. Cherry’s] license suspension departed from the essential requirements of the law and was not based on competent substantial evidence. Because [Ms. Cherry’s] arguments IV and V are dis-positive, the Court finds it unnecessary to address her other arguments.
(Emphasis added).
The Department now seeks second-tier review of this decision. Where a license is suspended for refusal to submit to a breath test, the hearing officer’s review at a formal review hearing includes the following:
1.Whether the law enforcement officer had probable cause to believe that the person whose license was suspended was driving or in actual physical control of a motor vehicle in this state while under the influence of alcoholic beverages or chemical or controlled substances.

2. Whether the person whose license was suspended refused to submit to any such test after being requested to do so by a law enforcement officer or coirectional officer.

3. Whether the person whose license was suspended was told that if he or she refused to submit to such test his or her privilege to operate a motor vehicle would be suspended for a period of 1 year or, in the case of a second or subsequent refusal, for a period of 18 months.
§ 322.2615(7)(b), Fla. Stat. (2010) (emphasis added). “The hearing officer shall determine by a preponderance of the evidence whether sufficient cause exists to sustain, amend, or invalidate the suspension.” § 322.2615(7), Fla. Stat. (2010).
On first-tier certiorari review from the hearing officer’s decision to sustain the suspension, “[t]he circuit court’s standard of review was limited to a determination whether procedural due process was accorded, whether the essential requirements of law had been observed, and whether the administrative order was supported by competent substantial evidence.” See Dep’t of High. Saf. & Motor Veh. v. Marshall, 848 So.2d 482, 485 (Fla. 5th DCA 2003). Thereafter, this Court’s review of a second-tier certiorari petition “is limited to determining whether the circuit court afforded procedural due process and applied the correct law.” Id.; see State, Dep’t of High. Saf. & Motor Veh. v. Edenfield, 58 So.3d 904, 906 (Fla. 1st DCA 2011).
This Court has granted certiorari relief where a circuit court, sitting in its appellate capacity, improperly reweighs the evi- *855 denee considered by the hearing officer at a license suspension hearing. See Marshall, 848 So.2d at 485-86; see also Dep’t of High. Saf. & Motor Veh. v. Satter, 643 So.2d 692, 695 (Fla. 5th DCA 1994).
As an initial matter, we observe that the correctness of the circuit court’s conclusion as to Ms. Cherry’s fourth issue is dependent on the correctness of its conclusion as to Ms. Cherry’s fifth issue. The right to an independent blood test only matures after the DUI arrestee submits to the DUI breath test and desires to obtain an independent test. See Dep’t of High. Saf. & Motor Veh. v. Green, 702 So.2d 584, 586 (Fla. 2d DCA 1997). Thus, in this case, if the hearing officer was correct in her determination that Ms. Cherry’s actions constituted a refusal to submit to a breath test, it then follows that her right to seek an independent blood test did not arise.[2] Id.
In this case, there was competent, substantial evidence in the record from which the hearing officer could conclude that, although Ms. Cherry did not expressly refuse to submit to a breath alcohol test, she did so by purposely avoiding the submission of valid samples. Despite her evasion, the BATA did report two breath alcohol readings; however, the same BATA also registered that these two readings were unreliable for purposes of determining breath alcohol level due to Ms. Cherry’s failure to supply sufficient breath volume during each of her sample submissions.
Florida Administrative Code Rule 11D-8.002(12) defines an “Approved Breath Alcohol Test” as follows:
[A] minimum of two samples of breath collected within 15 minutes of each other, analyzed using an approved breath test instrument, producing two results within 0.020 g/210L, and reported as the breath alcohol level. If the results of the first and second samples are more than 0.020 g/210L apart, a third sample shall be analyzed. Refusal or failure to provide the required number of valid breath samples constitutes a refusal to submit to the breath test. Notwithstanding the foregoing sentence, the results) obtained, if proved to be reliable, shall be acceptable as a valid breath alcohol level.
(Emphasis added). The language of the rule clearly establishes that in order for a breath sample to be a valid breath sample it must be reliable. The BATA generated by the testing device reported that neither of Ms. Cherry’s breath samples met the minimum requirements for volume; therefore, neither was reliable, and neither was valid. Because Rule 11D-8.002(12) clearly provides that a “[r]efusal or failure to provide the required number of valid breath samples constitutes a refusal to submit to the breath test,” it follows that there was competent, substantial evidence to support the hearing officer’s determination that Ms. Cherry had refused to submit to a breath test. See § 322.2615(11), Fla. Stat. (2010); Fla. Admin. Code R. 15A-6.013 (5); Dep’t of High. Saf. & Motor Veh. v. Swegheimer, 847 So.2d 545, 546 (Fla. 5th DCA 2008). This competent, substantial evi *856 dence of a refusal was buttressed by the breath test video and Trooper Hooker’s charging affidavit.
The circuit court both improperly reweighed the evidence before the hearing officer and applied the wrong law by engaging in its own review of Ms. Cherry’s breath test video and determining that Ms. Cherry had complied with the law simply by “providfing] two breath samples collected within fifteen minutes of each other and consistent with an approved breath-alcohol test as required under Rule 11D-8.002(13)(sic) and regulated by section 316.1932(l)(a)2., Florida Statutes.” The circuit court attempted to substantiate this conclusion by relying upon the BATA, without assigning any significance to the “volume not met” language that was co-located with each breath test result on the BATA form itself. The circuit court’s opinion fails even to mention the express language on the BATA that neither of Ms. Cherry’s breath samples was “Reliable to Determine Breath Alcohol Level.”
The circuit court’s erroneous conclusion appears to have been based upon its incorrect reliance on the circuit court appellate decision in Mulligan v. State, 9 Fla. L. Weekly Supp. 146a (Fla. 7th Cir.Ct.2002). To be sure, the holding in Mulligan involved a factual scenario similar to the facts at issue in this case, but there was one key difference. The petitioner in Mulligan provided his breath test samples on an Intoxilyzer 5000 series, not an Intoxi-lyzer 8000 series; thus, instead of registering a reading of “volume not met,” as occurred in the instant case, the results of Mulligan’s Intoxilyzer simply indicated that “the test had low sample volume— value printed was highest obtained.”
There have been numerous cases where the courts of this State have concluded that the designation “low sample volume— value printed was highest obtained,” was not an impediment to the introduction of the breath sample at trial. See State v. Davis, 3 Fla. L. Weekly. Supp. 522a (Fla. Polk Cty. Ct.1995), aff'd, Davis v. State, 4 Fla. L. Weekly Supp. 501a (Fla. 10th Cir. Ct.1997) (“Current Florida law has found that low sample volume results are not facially invalid, and that they are an accurate reflection of the amount of alcohol in a person’s breath sample.”); see also State v. Conyers, 2 Fla. L. Weekly Supp. 439a (Fla. Dade Cty. Ct.1994); State v. Willis, 1 Fla. L. Weekly Supp. 118a (Fla. Palm Beach Cty. Ct.1992). In cases where the Intoxi-lyzer 8000 registered a reading or readings of “volume not met,” however, it appears that the circuit courts have routinely concluded that such a reading was unreliable and, therefore, not valid. See Kenyon v. Dep’t of High. Saf. & Motor Veh, 16 Fla. L. Weekly Supp. 899a (Fla. 4th Cir.Ct. 2009) (“The machine produced a print-out that read “volume not met” , which means that Petitioner was not providing a sufficient amount of breath in order for the machine to produce a valid test result.”); Underwood v. Dep’t of High. Saf. & Motor Veh., 15 Fla. L. Weekly Supp. 299a (Fla. 4th Cir.Ct.2008) (“The printout from the machine established that both of the samples given by Petitioner were designated as ‘Volume Not Met,’ and the machine indicated that because of this, both samples were not reliable to determine breath alcohol level”); Saladino v. State of Florida, Dep’t of High. Saf. & Motor Veh, 15 Fla. L. Weekly Supp. 222a (Fla. 12th Cir. Ct.2008) (“The Petitioner submitted two breath samples, but the results for both indicated Volume not met,’ meaning the samples were insufficient to determine Petitioner’s breath alcohol level.”). The circuit court’s reliance on Mulligan was misplaced given that each case involved a *857 different version of the Intoxilyzer.[3] Breath volume is a key value for the Intox-ilyzer 8000, but not for the 5000.[4]
Finally, there is the circuit court’s reliance on a 1970 decision of the Georgia Supreme Court in Burson v. Collier, 226 Ga. 427, 175 S.E.2d 660 (1970). Burson dealt with a Georgia statute that authorized a license suspension for refusal to submit to a chemical test. Notably, unlike the instant case where the test at issue was a breath test utilizing the Intoxilyzer 8000, the test in Burson involved the usage of a balloon and the driver’s attempts to inflate the balloon. The technician declared that the driver in Burson had “refused” to complete the test by failing to sufficiently inflate the balloon. Ultimately, the Supreme Court of Georgia rejected this approach because the relevant statute did not define what constituted a “complete” test and the supreme court did not “think it a salutary practice to let the Intoximeter operator have an unfettered right to determine what is or is not a complete test.” Id., 75 S.E.2d at 662 (emphasis added).[5] The operator’s subjective *858 judgment in the Burson case about whether the test was “complete” bears almost no similarity to the read-out on the Intoxilyzer 8000 equipment that breath volume was not met. Besides, unlike the law in Georgia, Florida law does not concern itself with whether the test was “complete.” Rather, Florida law is concerned with whether Ms. Cherry provided the “required number of valid breath samples.” Fla. Admin. Code R. 11D-8.002(12). Here, without any credible excuse, Ms. Cherry provided no valid breath samples, which “constitute^] a refusal to submit to the breath test.” Id.
The decision of the circuit appellate panel is quashed.
QUASHED.
SAWAYA and PALMER, JJ„ concur.

. At the administrative hearing that ultimately followed, Trooper Hooker appeared and testified that the statements he made in this affidavit were "true and correct.”

. There is a legitimate question whether Ms. Cherry actually sought an independent blood test during the proceedings at the breath test center. The video reveals that she repeatedly asked for a blood test, however, it appears that this request was in the context of seeking a blood test in lieu of a breath test, not in addition to a breath test. Ms. Cherry never asked for an "independent” blood test. See Dep’t of High. Saf. & Motor Veh. v. Green, 702 So.2d 584, 586 (Fla. 2d DCA 1997) ("Mr. Green had no right to demand a blood test instead of a breath test.”).

. It may also be that the Mulligan court was relying on the version of Rule 11D-8.002(16) in effect prior to November 5, 2002. That version of the rule expressly said that two results within the 0.020g taken within fifteen minutes of each other was "acceptable as a valid breath test.” That language was removed from the rule in 2002. Since that time, it appears that a breath sample is not valid unless it satisfies the minimum breath volume requirements of the Intoxilyzer 8000.

. In 2008, Judge Wayne Miller wrote an excellent and informative order that detailed differences between the Intoxilyzer 5000 and the Intoxilyzer 8000. State v. Harris, 15 Fla. L. Weekly Supp. 486a (Fla. Monroe Cty. Ct.2008). It also addressed the mode of operation of the Intoxilyzer 8000, including reliability of results where adequate volume, constant slope and sufficient time are met. Judge Miller explained,
In order to be considered a valid breath sample, a minimum of 1.1 liters of air must enter the instrument’s testing chamber for at least one second, and a sufficient slope plateau must be reached. A subject is given three minutes to supply a valid breath sample that meets all the above requirements. A minimum of . 17 liters of breath is needed to trigger the flow meter. A minimum of .15 liters is needed to maintain it. Without either, a valid breath test cannot be completed. When a sufficient amount is emitted into the mouthpiece to trigger the flow meter, a pressure switch introduces the breath sample into the sample chamber. The amount of air emitted in each breath sample must meet a sufficient slope level. In other words, the breath sample is given, the alcohol content is read, and that alcohol content must reach a point where it levels off at substantially the same reading. The alcohol content must reach a relatively level plane before a test can be considered valid.

Id.

.In a more recent Georgia appellate opinion, Thomas v. State, 226 Ga.App. 1, 485 S.E.2d 246 (1997), the defendant appealed his conviction for DUI, arguing, inter alia, "that the trial court erred in finding [Defendant] refused to complete the breath test, and that he therefore had a right to a blood test.” Id. at 248. In rejecting this argument, the appellate court said:
We note, however, that there was conflicting testimony regarding the sincerity of Thomas' efforts to perform the breath test. Finding he intentionally failed to supply a sufficient breath sample was therefore within the purview of the factfinder as judge of the witnesses' credibility.
Thomas relies upon Burson v. Collier, 226 Ga. 427, 428-429(1)(a), (2), 175 S.E.2d 660 (1970), for the proposition that failure to supply a sufficient breath sample may not be considered a refusal. Burson, however, is distinguishable. In that case, the accused motorist suffered from emphysema, and the trier of fact did not find he had refused to complete the test. Id. Here, however, the evidence would support a finding that Thomas intentionally refused to complete the test designated by the state, and therefore had no right to obtain a test of his own choosing. See Duckett, supra.
Id. (emphasis added); see Bartnick v. State, 203 Ga.App. 369, 416 S.E.2d 739 (Ga.Ct.App. 1992).